**TEXAS ASSOCIATION OF COUNTIES COUNTY GOVERNMENT RISK MANAGEMENT POOL, Petitioner,**

v.

**MATAGORDA COUNTY and Keith Kilgore, Respondents.**

No. 98–0968.

Supreme Court of Texas.

Argued Oct. 20, 1999.

Decided Dec. 21, 2000.

Rehearing Overruled March 8, 2001.

Robert A. Lamb, Jr., George H. Kolb, James Price Collins, Wilson, Elser Moskowitz, Edelman & Dicker, Dallas, Todd A. Hunter & Handel, Corpus Christi, E. Stratton Horres, Jr., Wilson, Elser Moskowitz, Edelman & Dicker, Dallas, for petitioner.

Robert D. Allen, Douglas R. Hafer, James Edward Etri, Baker & McKenzie, Donald R. Uher, Bay City, Aaron L. Mitchell, Thompson, Coe, Cousins & Irons, Dallas, Jill Cornelius, Matagorda County Atty., Bay City, for respondent.

Justice O'NEILL delivered the opinion of the Court joined by Chief Justice PHILLIPS, Justices ENOCH, BAKER, ABBOTT, HANKINSON, and GONZALES.

In this case, we decide whether the Texas Association of Counties County Government Risk Management Pool (TAC) may obtain reimbursement from its insured, Matagorda County, for an amount that TAC paid to settle a claim that was later determined to be excluded from coverage. The trial court ruled that TAC was entitled to reimbursement, but the court of appeals reversed. 975 S.W.2d 782. Because TAC established neither an implied-in-fact nor an implied-in-law right to reimbursement, we affirm the court of appeals' judgment.

## I

Since the late 1980s, TAC has provided law-enforcement-liability insurance to Matagorda County.[1] Because Matagorda County's jail fell out of compliance with the minimum requirements of the Texas Commission on Jail Standards, in 1991 TAC began including an endorsement to its policy excluding coverage for any claim "arising out of jail."

In 1993, inmates armed with razor blades physically and sexually assaulted three other prisoners (collectively "the *Coseboon* plaintiffs"). The *Coseboon* plaintiffs sued Matagorda County and its sheriff, Keith Kilgore (collectively "the County"), both of whom demanded that TAC defend and indemnify them under the law-enforcement-liability insurance policy. TAC initially denied coverage because of the jail exclusion. But after negotiations with the County, TAC agreed to pay the defense costs of the counsel that the County had retained to represent it in the *Coseboon* suit, subject to a reservation of rights to continue to deny coverage. Also, TAC filed this suit seeking a declaratory judgment that the claims were not covered. The County asserted that the claims were covered, and filed several counterclaims against TAC.

In 1995, the *Coseboon* plaintiffs offered to settle their lawsuit for $300,000. This demand was within the policy limits. The County's lawyer advised TAC that the proposed settlement was reasonable and prudent, given the facts and circumstances of the case. The Matagorda county judge,

1. Local Government Code Chapter 119 allows Texas counties to form a risk management pool to insure participating counties against liability for the acts and omissions of the counties and their officials and employees. TEX. LOC. GOV'T CODE § 119.002. The Texas Association of Counties County Government Risk Management Pool was created under Chapter 119 and also Texas Government Code Chapter 791. TEX. GOV'T CODE §§ 791.001–.032. Although we refer to the pool as "TAC" for brevity, the pool is a distinct entity from the Texas Association of Counties, a Texas nonprofit corporation.

the chief administrative officer for the County, was advised of the proposed settlement and the County was asked to fund the settlement. The County, however, continued to insist that the claim was covered, and advised TAC that it would not contribute to the settlement. ·

TAC then issued a second reservation-of-rights letter to the County, this time reserving its rights to continue to deny coverage and to seek reimbursement of the settlement funds from the County if the declaratory-judgment action established that the *Coseboon* suit was not covered. The letter stated:

1. we have advised you of ongoing settlement discussions with Coseboon's counsel;

2. you have chosen not to contribute to the funding of the settlement;

3. Jim Ludlum, your counsel, agrees with [TAC] that a $300,000 settlement of the *Coseboon* matter is not only *not* unreasonable, but prudent given the facts and circumstances [ ];

4. [TAC is not] waiving any of its rights to pursue full recovery of this settlement amount from the County ... in the declaratory judgment action;

5. the funding of this settlement by [TAC and its reinsurers] is based solely upon the recognition of the exposure inherent in the *Coseboon* litigation and their desire to avoid having this opportunity to settle fall through, possibly resulting in a jury verdict far in excess of the $300,000 settlement;

6. this funding should not be construed by anyone as a voluntary payment and is specifically made without

prejudice to the rights of [TAC] to recover up to the entire amount as determined in [the declaratory-judgment action.]

The letter concluded:

If you have any question that the intent of [TAC] is anything other than funding settlement of the Cosboon [sic] matter and proceeding with the declaratory judgment action to recover the full amount of the funding, please advise me immediately.

The County did not respond to the letter.

The insurance agreement between the County and TAC allowed TAC to settle any claim at its own discretion, and without the County's consent. TAC settled the *Coseboon* litigation for $300,000,[2] and the *Coseboon* plaintiffs dismissed their lawsuit. The settlement agreement released the County and its employees from any and all claims, and released any claims against TAC. The County did not object to the settlement. After the settlement, TAC amended its declaratory-judgment action to request reimbursement of the settlement funds. The County stipulated that it "does not dispute the reasonableness of TAC's settlement of the *Coseboon* litigation."

The case proceeded to trial on the coverage dispute. The trial court ruled that the jail exclusion was not ambiguous, and a jury resolved the remaining issues in TAC's favor. The trial court rendered a declaratory judgment for TAC and awarded recovery of its $300,000 settlement payment, together with interest, attorneys' fees, and costs. The court of appeals concluded that no equitable remedy allowed TAC to recover the settlement funds, and

---

**2.** The *Coseboon* settlement agreement suggests that the County did not participate in the settlement negotiations. The release recites that "all negotiations have taken place strictly between a representative of the insurer for [the County] and [the *Coseboon* plaintiffs'] counsel."

that there was no indication that the County agreed either to be bound by the settlement or to reimburse TAC. 975 S.W.2d 782. Accordingly, the court of appeals reversed and rendered judgment that TAC take nothing.

## II

Whether an insurer[3] may seek reimbursement from its insured for settlement funds paid under a reservation of rights upon an adjudication of noncoverage is an issue of first impression for this Court. We begin by examining the insurance contract between the parties. It is undisputed that the insurance policy that defines the parties' rights and obligations does not provide TAC a right of reimbursement; TAC first asserted such a right in its reservation-of-rights letter. It is similarly undisputed that the County did not otherwise expressly agree to reimburse TAC for the *Coseboon* settlement. We must decide whether the County's consent to reimburse TAC may be implied from this record, or whether the circumstances presented warrant imposing, in law, an equitable reimbursement obligation. We consider first the implied-consent issue.

## A

### Implied Consent to Reimburse

■ TAC contends that the County's silence in response to its reservation-of-rights letter, together with the County's stipulation acknowledging no dispute as to the settlement's reasonableness, establishes an implied-in-fact contractual obligation for the County to provide reimbursement. For a number of reasons, we disagree.

■ First, a unilateral reservation-of-rights letter cannot create rights not contained in the insurance policy. *See Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510, 515–16 (Wyo.2000) (rejecting the notion that the insurer could base a right to recover defense costs on a reservation letter and stating "we will not permit the contract to be amended or altered by a reservation of rights letter."). The insurance policy at issue allows TAC to settle a case against its insured without the insured's consent. It would have been a simple matter for TAC to also state in the policy that it could seek reimbursement for those settlement funds if it is later determined that the policy does not provide coverage.[4] If TAC had done so,

---

3. TAC contends that it is not an insurer. It cites section 119.008 of the Local Government Code, which provides that a pool created under that Chapter "is not insurance for the purposes of the Insurance Code and other laws of this state." TAC also notes that the participating counties signed an agreement and bylaws stating that "the parties recognize that the Pool is a risk management fund authorized by statute and the coverage provided is not considered insurance under the Texas Insurance Code and under other state laws." But because TAC is acting in a capacity virtually identical to that of an insurer in this case, we treat TAC as an insurer for the limited purpose of determining whether it is entitled to reimbursement of settlement funds. We note that TAC itself relies upon insurance cases to support its position.

4. TAC does not contend that it could not have included a reimbursement clause in its policy. A number of other states' courts have upheld reimbursement clauses in insurance contracts. *See, e.g., Rural Mut. Ins. Co. v. Peterson*, 134 Wis.2d 165, 395 N.W.2d 776, 778–82 (1986); *Employers Mut. Cas. Co. v. Nicholas*, 124 Colo. 544, 238 P.2d 1120 (1951); *Serv. Mut. Liab. Ins. Co. v. Aronofsky*, 308 Mass. 249, 31 N.E.2d 837, 839–40 (1941); *see also* Annotation, *Validity and Construction of Liability Policy Provision Requiring Insured to Reimburse Insurer for Payments Made Under Policy*, 29 A.L.R.3d 291; *see also Nat'l Cas. Co. v. Lane Express, Inc.*, 998 S.W.2d 256, 265–66 (Tex.App.—Dallas 1999, pet. denied) (enforcing insurance policy clause requiring insured motor carrier to reimburse insurer). And the presence or absence of a reimburse-

its reservation letter would in fact be reserving contractual rights. But TAC's "reservation" letter was simply a unilateral offer to append a reimbursement provision to the insurance contract. That provision is binding only if the County accepted it.

■ TAC contends that the County implicitly agreed to reimburse the settlement funds by not responding to TAC's reservation-of-rights letter. But as a general rule, "silence and inaction will not be construed as an assent to an offer," 2 WILLISTON ON CONTRACTS § 6:49 (4th ed.1991), and none of the narrow exceptions to this general rule apply in this case. TAC cites our decision in *Preston Farm & Ranch Supply, Inc. v. Bio–Zyme Enters.*, 625 S.W.2d 295, 298 (Tex.1981), for the proposition that an insured's silence may suffice to show that it consented to reimburse the insurer. But our decision in *Preston Farm* did not turn on one party's failure to respond to a unilateral offer. Instead, it rested on a continuing course of conduct between two merchants:

> [T]here is evidence of a *course of conduct which gave rise to an agreement* to pay interest. The record reflects that the parties had extensive dealings with one another. Altogether twenty separate sales were made from Bio–Zyme to [Preston]. The sales continued for over a year, and [Preston] received a statement each month containing the service charge provision.... [Preston] continued [the] credit purchases and ... continued to accept the goods.... No objections to the service charges in question were ever made. To the contrary, Preston Farm paid [the service charges].... By [Preston's] *continued purchases and payments* [it]

at least impliedly agreed to pay the specified interest.

*Id.* at 298 (emphasis added).

The Court recognized this distinction in *Triton Oil and Gas Corp. v. Marine Contractors and Supply, Inc.*, 644 S.W.2d 443, 445 (Tex.1982). In *Triton Oil,* we rejected the notion that Marine Contractors' unilateral act of charging interest on Triton's invoices and its deduction of those charges from amounts due Triton were evidence of an agreement between the parties that Triton would pay the interest charges. *Id.* at 445–46. We distinguished *Bio–Zyme,* noting that "the mere failure to object within a reasonable time to the interest charges, without more, could not establish an agreement between the parties." *Id.* at 445. TAC's suggestion that an insured's failure to object to a letter reserving the "right" to seek reimbursement implies consent is irreconcilable with *Triton.*

■ TAC purports to find support for its implied contract theory in *Western Casualty & Surety Co. v. Newell Mfg. Co.*, 566 S.W.2d 74, 76 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). But *Newell* does not hold, or even imply, that an insurer may unilaterally impose affirmative, extracontractual obligations upon an insured by issuing a reservation-of-rights letter. Instead, the appeals court merely noted the unremarkable proposition that an insured's agreement that an insurer does not waive coverage defenses may be inferred from his conduct after receiving notice of the insurer's offer to defend under a reservation of rights. *Id.* By allowing the insurer to defend the action, the insured impliedly agrees that the insurer will not thereby waive its right to later contest coverage. *Id.* The *Newell* court did not suggest that an insured, by accept-

---

ment clause in the insurance contract could affect the premium charged. *See* TEX. INS.

CODE art. 5.13–2, § 4 (listing factors to be considered in setting insurance rates).

ing an insurer's defense under a reservation of rights, might somehow impliedly consent to additional obligations not contained in the insurance contract. This is a critical distinction:

> There is a difference between an insurer's reservation of its right to disclaim coverage, which occurred here, and an agreement by the insured that he will reimburse the insurer for any reasonable settlement, which did not occur here. An insurer's reservation of rights is the notification to the insured that the insurer will defend the insured, but that the insurer is not waiving any defenses it may have under the policy, and it protects an insurer from a subsequent attack on its coverage position on waiver or estoppel grounds.

*Medical Malpractice Joint Underwriting Ass'n v. Goldberg*, 425 Mass. 46, 680 N.E.2d 1121, 1129 n. 31 (1997); *see Shoshone*, 2 P.3d at 516 (denying the insurer reimbursement for defense costs in a similar context and stating: "endorsing such conduct is tantamount to allowing the insurer to extract a unilateral amendment to the insurance contract. If this became common practice, the insurance industry might extract coercive arrangements from their insureds....") (quoting Order on Plaintiff's Motion for Summary Judgment, *America States Ins. Co. v. Ridco, Inc., Riddles Jewelry, Inc., and Ken B. Berger*, Civ. No. 95CV158D (D.Wyo.1999)). Thus, the County's silence in response to TAC's reservation-of-rights letter cannot support an implied agreement to reimburse settlement costs.

■ Moreover, a meeting of the minds is an essential element of an implied-in-fact contract. *See Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex.1972). Yet TAC's own evidence demonstrates that there was no meeting of the minds between the County and TAC regarding reimbursement. TAC's letter advising the County that it intended to settle the *Coseboon* case specifically acknowledged that "the County was 'looking to [TAC] to settle the *Coseboon* litigation *without a contribution from Matagorda County*,'" and further noted that the County had "chosen not to contribute to the funding of the settlement." (Emphasis added). The record demonstrates that the County consistently contested TAC's coverage position and insisted that TAC pay under the policy.

TAC relies upon the County's failure to dispute the settlement's reasonableness to support a reimbursement right. But the mere fact that the County did not dispute the settlement's reasonableness does not imply that it agreed to reimburse TAC should TAC decide to accept the settlement and then later prevail on its coverage defense. *Accord Goldberg*, 680 N.E.2d at 1128 (stating that the court could not infer an agreement to reimburse the insurer when the insured had consistently asserted that the claims were covered and challenged the insurer's reservation of rights).

We hold that the County's agreement to reimburse TAC for funds paid to settle the *Coseboon* suit cannot be implied from this record. We now consider whether the circumstances presented will support imposing upon the County an equitable reimbursement obligation.

**B**

**Equitable Rights to Reimbursement**

■ TAC argues that we should apply the doctrine of equitable subrogation to support its reimbursement claim. Typically, an insurer paying a claim under a policy is equitably subrogated to any claim the insured may have against a third party responsible for the insured's injury. In

*Medina v. Herrera*, we considered whether the election-of-remedies doctrine, which bars the pursuit of remedies that are so inconsistent as to result in manifest injustice, barred an injured worker's tort suit against his employer when the worker had recovered workers' compensation benefits. 927 S.W.2d at 600. The worker contended that no double recovery would result if he were allowed to pursue his tort claims because the employer's compensation carrier could recoup the benefits it had paid via a subrogation action. *Id.* at 603. We concluded that manifest injustice would result if the compensation carrier were equitably subrogated to its insured, in part because the carrier would be required to, in effect, sue its own policyholder. *Id.* at 604.

As the court of appeals recognized, allowing an insurer to unilaterally settle claims and then step into the shoes of the claimant could potentially foster conflict and distrust in the relationship between an insurer and its insured. 975 S.W.2d at 787. Allowing subrogation of an insurer against its insured has been widely rejected in this context. *See, e.g., Great Lakes Transit Corp. v. Interstate S.S. Co.*, 301 U.S. 646, 654–55, 57 S.Ct. 915, 81 L.Ed. 1318 (1937); *McBroome–Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 36 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.); *Highway Ins. Underwriters v. J.H. Robinson Truck Lines, Inc.*, 272 S.W.2d 904, 908 (Tex.Civ.App.—Galveston 1954, writ ref'd n.r.e.); *Stafford Metal Works, Inc. v. Cook Paint & Varnish Co.*,

418 F.Supp. 56, 58 (N.D.Tex.1976). Accordingly, we hold that TAC is not entitled to reimbursement on an equitable subrogation theory.

■ Finally, TAC argues that it is entitled to recover under the intertwined quasi-contractual theories of quantum meruit and unjust enrichment. We agree with the court of appeals that these equitable theories do not apply in the circumstances presented. *See* 975 S.W.2d at 785. Although the dissent relies upon *Buss v. Superior Court*, 16 Cal.4th 35, 65 Cal. Rptr.2d 366, 939 P.2d 766 (1997) to support a quasi-contractual defense-cost-reimbursement right, the few courts that have considered the settlement-reimbursement question have generally opted to recognize a reimbursement right only if the insured has authorized the settlement and agreed to reimburse the insurer should the insurer prevail on its coverage defense.[5] *See Goldberg*, 680 N.E.2d at 1129 (holding that an insurer may seek reimbursement "only if the insured has agreed that the insurer may commit the insured's own funds to a reasonable settlement with the right later to seek reimbursement from the insured"); *Mt. Airy Ins. Co. v. Doe Law Firm*, 668 So.2d 534 (Ala.1995); *see also Val's Painting & Drywall, Inc. v. Allstate Ins. Co.*, 53 Cal.App.3d 576, 126 Cal.Rptr. 267, 273–74 (1975) (holding insurer may seek reimbursement where the insurer has conveyed a reasonable offer to the insured and given the insured an opportunity to assume the defense); *see also* Robert H. Jerry, II, *The Insurer's Right to Reimbursement of De-*

**5.** An alternative approach was recognized in *Maryland Cas. Co. v. Imperial Contracting Co.*, 212 Cal.App.3d 712, 260 Cal.Rptr. 797 (1989). There the insurer requested the insured's consent to participate in a settlement. The insured refused. The trial court granted the insurer declaratory relief authorizing the insurer to participate in the settlement without the insured's consent. The appeals court affirmed the trial court, and summarized an insurer's options in such a situation. The insurer may: (1) turn over the defense to the insured and await resolution of its coverage dispute; (2) relinquish its reservation of rights and acknowledge coverage; or (3) if the insured will not authorize the settlement, seek court approval of the proposed settlement.

*fense Costs,* 42 ARIZ. L.REV. 13, 70 n. 220 (2000). We agree with this approach. Otherwise, the insured is forced to choose between rejecting a settlement within policy limits or accepting a possible financial obligation to pay an amount that may be beyond its means, at a time when the insured is most vulnerable. *Cf. Shoshone,* 2 P.3d at 516 (citing Order on Plaintiff's Motion for Summary Judgment, *America States Ins. Co.,* Civ. No. 95CV158D). Rather than place the insured in this position, we hold that, when coverage is disputed and the insurer is presented with a reasonable settlement demand within policy limits, the insurer may fund the settlement and seek reimbursement only if it obtains the insured's clear and unequivocal consent to the settlement and the insurer's right to seek reimbursement. *See Goldberg,* 680 N.E.2d at 1129.

TAC claims that the Fifth Circuit has recognized a reimbursement right under Texas law in two cases. In the first, the court held that an excess insurer was not estopped by its participation in a settlement from seeking reimbursement of its retained limit "[i]n accordance with the provisions of the ... policy...." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.,* 932 F.2d 442, 444 (5th Cir. 1991). Far from holding that equitable or quasi-contractual principles required reimbursement, as TAC argues, the court merely held that equitable principles did not preclude the insurer from enforcing the policy's terms. In the second case, the court primarily addressed a different, unrelated, issue. *See Lloyd's of London v. Oryx Energy Co.,* 142 F.3d 255 (5th Cir. 1998). With no analysis or explanation, the Fifth Circuit merely noted that on remand, Lloyd's was entitled to reimbursement for money it paid in punitive damages. *See id.* at 260. *Oryx* provides little, if any, support for TAC's reimbursement claim.

### III

TAC contends that denying a reimbursement right places insurers faced with a reasonable settlement offer within policy limits in an untenable position. We recognize that, however the issue is resolved, either insurers or insureds will face a difficult choice when coverage is questioned. But an insurer in such a situation that cannot obtain the insured's consent may, among other options, seek prompt resolution of the coverage dispute in a declaratory judgment action, a step we have encouraged insurers in TAC's position to take. *See State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 714 (Tex.1996); *see also Farmers Texas County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex.1997) (holding that insurer's duty to indemnify is justiciable before insured's liability is decided in an underlying suit when the insurer has no duty to defend and the same reasons that negate the duty to defend negate any possibility that insurer will ever have a duty to indemnify). In *Gandy,* we required insurers either to accept coverage or make a good-faith effort to resolve coverage before resolving the underlying claim. *See Gandy,* 925 S.W.2d at 714. TAC's position undermines *Gandy* by reducing insurers' incentive to seek early resolution of coverage disputes.[6]

Requiring the insurer, rather than the insured, to choose a course of action is appropriate because the insurer is in the business of analyzing and allocating risk and is in the best position to assess the viability of its coverage dispute. *See id.;*

---

6. We note that in this case, almost two years elapsed between the time TAC filed its declaratory-judgment action and the date it settled the *Coseboon* suit. The record reflects no effort by TAC during that time to resolve the coverage dispute.

*see also Shoshone,* 2 P.3d at 516 (stating "[t]he question as to whether there is a duty to defend an insured is a difficult one, but because that is the business of an insurance carrier, it is the insurance carrier's duty to make that decision"); *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 737 (Tex.1990) (observing that, if a policy provision is vague or ambiguous, the fault lies with the insurer as the policy's drafter). On balance, insurers are better positioned to handle this risk, either by drafting policies to specifically provide for reimbursement or by accounting for the possibility that they may occasionally pay uncovered claims in their rate structure.

## IV

### Conclusion

We hold that the County's consent to reimburse TAC's settlement costs cannot be implied from this record, and no equitable remedy will support a right of reimbursement under the circumstances presented. Accordingly, we affirm the court of appeals' judgment.

Justice OWEN filed a dissenting opinion, joined by Justice HECHT.

Justice OWEN, joined by Justice HECHT, dissenting.

Matagorda County has been unjustly enriched in this case. It acknowledges that the amount that the Texas Association of Counties paid to settle serious claims against it was reasonable. And Matagorda County must now concede that those claims were not covered by its agreement with the Association. The County should be required to bear responsibility for its own liabilities. Because the Court does not require it to do so, I dissent.

I would hold that when an insurer reserves its right to contest coverage and there has been a settlement demand within policy limits that the insured agrees is reasonable, the insurer may settle the claim and recover settlement costs based on an obligation that is implied in law. In order to prevent unjust enrichment, obligations are implied in law even when there is no agreement, either express or implied.

## I

The most cogent discussion of an insurer's reimbursement rights when a third party's claims against an insured are not covered appears in a decision of the California Supreme Court. *Buss v. Superior Court of Los Angeles County,* 16 Cal.4th 35, 65 Cal.Rptr.2d 366, 939 P.2d 766 (1997). That court held that a right of reimbursement for defense costs should be implied in law. *Id.* at 776–77. "The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual." *Id.* at 776.

The reimbursement issue in *Buss* arose in a case that the court called a "mixed" action, that is, some of the claims were covered by the insured's policy and some were not. Under California law, an insurer has a duty to defend all claims in a mixed action, including claims that are not even arguably covered. *Id.* at 775. But the question in *Buss* was whether the insured could nevertheless seek reimbursement for the costs of defending claims that were "not even potentially covered" when they were joined with claims that were covered. *Id.* at 776. The California Supreme Court first explained that the duty to defend non-covered claims in a mixed action was not a contractual obligation. "We cannot justify the insurer's duty to defend the entire 'mixed' action contractually, as an obligation arising out of the policy, and have never even attempted to do so." *Id.* at 775. Instead, the court has imposed the duty to defend as an obligation of law.

"[W]e can, and do, justify the insurer's duty to defend the entire 'mixed' action prophylactically, as an obligation imposed by law in support of the policy." *Id.*

But it does not follow, the California court reasoned, that the insured is entitled to benefit from a bargain that it did not make with the insurer. The court concluded that it "would not upset the [insurance] arrangement" to shift the defense costs of claims that are not covered to the insured. *Id.* at 776. One of the compelling reasons the court gave is that the insureds do not pay premiums for a defense of claims that are not covered:

> Under the policy, the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered. With regard to defense costs for these claims, the insurer has not been paid premiums by the insured. It did not bargain to bear these costs.

*Id.*

The court then held that a right of reimbursement is implied in law based on principles of restitution. *Id.* at 776–77. "[U]nder the law of restitution such a right runs against the person who benefits from 'unjust enrichment' and in favor of the person who suffers loss thereby." *Id.* at 777. The court further explained that "[e]ven if the policy's language were unclear, the hypothetical insured could not have an objectively reasonable expectation that it was entitled to what would in fact be a windfall." *Id.* In support of this conclusion, the court cited one of its earlier decisions in which it had said that if an insurer reserves the right to assert coverage issues, then it may seek reimbursement from its insured for a reasonable settlement payment. *Id.* (citing *Johansen v. California State Auto. Ass'n Inter–Ins. Bureau*, 15 Cal.3d 9, 123 Cal.Rptr. 288, 538 P.2d 744, 750 (1975)).

In another decision, *Maryland Casualty Co. v. Imperial Contracting Co.*, 212 Cal. App.3d 712, 260 Cal.Rptr. 797, 803 (1989), a California court had held that an insurance company was entitled to reimbursement of settlement costs over the objection of the insured once a court had determined that the settlement amount was reasonable. In the case before us today, there is no need for a court determination of the reasonableness of the settlement. Matagorda County has always conceded that the amount paid to settle the *Coseboon* litigation was reasonable.

Other decisions have held that an insurer may settle a claim without the consent of the insured and then seek reimbursement for the portion of the settlement funds that are the insured's sole obligation. In *Arkwright–Boston Manufacturers Mutual Insurance Co. v. Aries Marine Corp.*, 932 F.2d 442 (5th Cir.1991), an insured was effectively self-insured for the first $500,000 of liability after its primary carrier became insolvent. In the underlying suit against the insured, the plaintiff's settlement demand was $1,745,000. The insured's excess carrier, Arkwright, undertook to settle the case for that amount, but the insured refused to tender its $500,000. Arkwright sent a letter to the insured before disbursing the settlement funds advising that it intended to seek reimbursement of the $500,000 that represented the insured's obligation. *Id.* at 444. The insured did not object to the settlement or claim that it was unreasonable. The Fifth Circuit held that the insured was obligated to reimburse its insurer and that its obligation stemmed from its "duty to contribute its retained limit to what it admits was a reasonable settlement." *Id.* at 447. *See also Certain Underwriters at Lloyd's London v. Oryx Energy Co.*, 142 F.3d 255, 260 (5th Cir.1998) (holding that the insurer was entitled to reimbursement from the insured for amounts paid to settle punitive

damage claims that were not covered by the policy).

Here, Matagorda County is contractually responsible not just for a portion of the damages, but for all damages that it owed to the *Coseboon* plaintiffs. By definition, claims that are not covered under a policy of insurance are the responsibility of the insured. The insured should be required to contribute its full share of liability for amounts paid to settle contractually excluded claims.

Implying an obligation as a matter of law is far from unprecedented in this state's jurisprudence. This Court has implied at least two obligations in contracts of insurance. First was the *Stowers* obligation, which is a duty imposed on an insurer to accept a settlement demand within policy limits if the claim is covered and an ordinarily prudent person would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment. *See American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 849 (Tex.1994) (defining the duty imposed in *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544 (Tex.1929)). The *Stowers* obligation is not to be found within the four corners of an insurance policy. It has been imposed by the Court "as a matter of law." *Stowers,* 15 S.W.2d at 547. Second, this Court has imposed as a matter of law a duty of good faith and fair dealing in contracts of insurance. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987).

An obligation of reimbursement should be imposed when an insured pays an amount that the insured agrees is reasonable to settle a claim that is not covered. This rule of law would preserve the respective rights and obligations of parties to an insurance contract. An insured would be responsible for liabilities it incurs that are not covered by the policy of insurance. In this case, there is no principled basis for requiring the Association rather than Matagorda County to bear the cost of settling the *Coseboon* litigation. There is no dispute that the amount the Association paid to settle the matter was reasonable. Matagorda County is receiving a benefit for which it did not bargain-payment of a claim that was not covered under its agreement with the Association. Matagorda County has been unjustly enriched because it paid nothing to settle a serious claim against it. The Association has paid an obligation that was Matagorda County's alone.

The Court says that an insured should not be required "to choose between rejecting a settlement within policy limits or accepting a possible financial obligation to pay an amount that may be beyond its means, at a time when the insured is most vulnerable." 52 S.W.3d at 134. Certainly, an insured who has no coverage for claims brought against it may be in a "vulnerable" position. But that is not due to anything that the insurance carrier has done. It is a consequence of the insured's choice not to obtain full coverage. The Court's statement is also irrational. A reasonable settlement offer is one that the insured, acting as a person of ordinary care and prudence, would accept. In situations like the one before us, when there was a coverage dispute, an insured's knowledge that it ultimately may have to fund a settlement offer will cause the insured to make a fair evaluation of whether the settlement offer is in fact a reasonable one. But regardless of the size of a claim that is not covered, the financial obligation to pay that claim remains with the insured. An insured's lack of financial resources does not change that fact.

## II

I agree with the Court that in this case, there was no implied-in-fact agreement be-

tween the Association and Matagorda County. The letter that the Association sent to the County reserving the right to contest coverage and to seek reimbursement recognizes that the County had expressly declined to contribute to funding the settlement. The letter did not say that the Association would proceed with the settlement unless Matagorda County objected, nor did the County demand that the Association settle or do anything to affirmatively accept the settlement.

But the Court's opinion unnecessarily forecloses all implied-in-fact agreements between an insured and its insurer with regard to reimbursement for settlement payments. The Court says, "the insurer may fund the settlement and seek reimbursement only if it obtains the insured's clear and unequivocal consent to the settlement and the insurer's right to seek reimbursement." 52 S.W.3d at 134. The Court does not provide any rationale for such a sweeping ruling.

Implied-in-fact contracts are a species of contract. Unless there are strong public policy reasons for holding otherwise, the law of contracts applies to the relationship between an insured and its insurer. *See generally State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995) (holding that "the interpretation of insurance contracts is governed by the same rules of construction applicable to other contracts") (citing *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994)). If an insured tacitly accepts the benefits of an offer made by its insured, then an agreement is formed. *See generally* Jerry, *The Insurer's Right to Reimbursement of Defense Costs,* 42 ARIZ. L.REV. 13, 71 (2000). This is so even if the insured rejects a condition the insurer attached to the offer if the insured nevertheless accepts performance by the insurer. *Id.* at 71–72. Agreements of this nature frequently arise when an

insurance company sends a reservation-of-rights letter, and the insured accepts its benefits. *Id.*

In *Walbrook Insurance Co. v. Goshgarian & Goshgarian,* 726 F.Supp. 777 (C.D.Cal.1989), the insurance company sent a reservation-of-rights letter in which it stated that it intended to seek reimbursement of defense costs if it was determined that there was no duty to defend. *Id.* at 784. The insureds objected to this reservation, but they accepted $500,000 in defense costs. *Id.* The court concluded that even though the insureds "specifically objected" to the reservation of the right to seek reimbursement, that objection was inconsistent with the insureds' acceptance of the fruits of the insurance carrier's tender. *Id.* The court properly held that "acceptance of the monies constitutes an implied agreement to the reservation." *Id.*

Other courts have held that an insured's silence in response to an insurer's reservation of the right to seek reimbursement of defense costs coupled with an acceptance of the defense results in an implied agreement. *See Knapp v. Commonwealth Land Title Ins. Co.,* 932 F.Supp. 1169, 1172 (D.Minn.1996); *North Atl. Cas. & Sur. Ins. Co. v. William D.,* 743 F.Supp. 1361, 1367 (N.D.Cal.1990); *Omaha Indem. Ins. Co. v. Cardon Oil Co.,* 687 F.Supp. 502, 505 (N.D.Cal.1988); *Gossard v. Ohio Cas. Group of Ins. Cos.,* 35 Cal.Rptr.2d 190 (1994); *see also* Jerry, 42 ARIZ. L.REV. at 73 (concluding that under the law of contracts or the law of restitution, "the insurer has a right to reimbursement for costs incurred in defending noncovered claims" if the insurer reserves its right to seek reimbursement).

At least one court has held that there is a right of reimbursement for defense costs under a reservation-of-rights letter without discussing the legal theory for that hold-

ing. In *Resure, Inc. v. Chemical Distributors, Inc.*, 927 F.Supp. 190, 194 (M.D.La. 1996) (applying New Mexico law), the court held that because the reservation-of-rights letter specifically referred to reimbursement for defense costs, the insurer was entitled to reimbursement.

Depending on what a particular reservation-of-rights letter says, I can perceive that there may be valid distinctions between reservation-of-rights letters that address reimbursement for settlement payments and those that address defense costs. If an insured accepts a defense or payment for defense costs after receiving a reservation-of-rights letter, that acceptance should be deemed an acceptance of the insurer's right to reimbursement if it turns out that the claim was not covered. But silence or acquiescence to a settlement may or may not be deemed acceptance of an obligation to reimburse, depending on what the reservation-of-rights letter provided or on the parties' conduct. If in the case before us, the County had demanded that the Association settle the *Coseboon* litigation after receiving the reservation-of-rights letter, I would hold that an implied-in-fact agreement arose, even if the County maintained that there was no obligation to reimburse. A demand for settlement by the County would have constituted an acceptance of the Association's offer to settle the case with the right to seek reimbursement. *See, e.g., Walbrook*, 726 F.Supp. at 784. Or if the Association's letter had said it intended to proceed with the settlement ten days from the date of the letter unless the County advised it not to, I would likewise hold that there was an implied-in-fact agreement.

It would be more judicious for the Court to decide whether an implied-in-fact contract has arisen between an insured and its insurer on a case-by-case basis. Instead, the Court has entirely precluded the application of this aspect of contract law to insurers. The Court offers no compelling reason for that edict.

### III

The Court does not address defense costs in today's decision. However, the Court says at one point in its opinion that "a unilateral reservation-of-rights letter cannot create rights not contained in the insurance policy." 52 S.W.3d at 131. The decision that the Court cites for that proposition, *Shoshone First Bank v. Pacific Employers Insurance Co.*, 2 P.3d 510 (Wyo.2000), dealt with defense costs, but it did not address the situation in which there is no duty to defend.

In *Shoshone*, some of the claims against the insured were covered and some were not. The insurance company sent a reservation-of-rights letter in which it said that it intended to allocate the costs of defending the non-covered claims to the insured. The Supreme Court of Wyoming held, unremarkably, that it would not allow allocation of costs. *Id.* at 514. It concluded that it should follow the minority view, which is that an insurance company's duty to defend includes the obligation to defend non-covered claims when they are asserted together with covered claims. *Id.* at 515. The reservation-of-rights letter was ineffective to alter the contractual duty to defend. *Id.*

The Court's statement that a "unilateral reservation-of-rights letter cannot create rights not contained in the insurance policy" is not only overly broad, it is a misstatement. For example, an insurance company can bind itself in a reservation-of-rights letter to pay defense costs even if none of the claims against the insured are covered. An insurance company that tenders a defense but reserves only the right to assert that it has no indemnity obligation cannot seek to recover defense

costs when it is subsequently determined that there was no coverage and no duty to defend. Dohoney, *The Liability Insurer's Duty to Defend*, 33 BAYLOR L.REV. 451, 478 (1981); *see also Employers Cas. Co. v. Tilley*, 496 S.W.2d 552, 559 (Tex.1973).

Under Texas law, if an insurance company tenders a defense with a reservation of rights, the insured may either accept that defense with the reservation of rights, or it may refuse the tendered defense and defend the suit itself. *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 120 (5th Cir.1983); *American Eagle Ins. Co. v. Nettleton*, 932 S.W.2d 169, 174 (Tex.App.—El Paso 1996, writ denied). If the insured decides to defend itself, it must bear the cost of that defense if the claims against it are not covered by insurance.

It would seem that an insured should have to pay defense costs for excluded claims regardless of whether it defends itself or allows its insurance company to assume the defense with a reservation of rights. The Court does not offer any reason why, on public policy or other grounds, an insurer should be foreclosed from recovering defense costs if the insured accepts a defense that is tendered with a reservation of rights. Nevertheless, insurers should be on notice that today's decision may foreshadow how the Court will decide the issue if it is presented.

&ast; &ast; &ast; &ast; &ast; &ast;

I would hold that when an insurer pays an amount that the insured agrees is reasonable to settle a claim, and a court later determines that the claim was not covered, the law imposes an obligation on the insured to reimburse the insurer. Because I would render judgment for the Texas Association of Counties on this basis, I respectfully dissent. I also take issue with the Court's categorical holding that the law of implied contracts does not apply to the relationship between insurers and their insured.