IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
02-0730
════════════
 
Excess 
Underwriters at Lloyd’s, London and
Certain 
Companies Subscribing Severally but not
Jointly to Policy 
No. 
548/TA4011FO1, Petitioners,
 
v.
 
Frank’s 
Casing Crew & Rental Tools, Inc., Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fourteenth District of Texas
════════════════════════════════════════════════════
 
 
Argued September 24, 2003
 
 
Justice Hecht, 
concurring.
 
 
I 
join fully in the Court’s opinion and write separately only to say that while I 
agree distinctions can be found between this case and Texas Association of 
Counties County Government Risk Management Pool v. Matagorda County,[1] 
in fact those distinctions are immaterial, and the rule in Matagorda 
County cannot survive today’s decision for the reasons Matagorda 
County was wrongly decided.[2]
The 
question in both cases is this: may a liability insurer accept a reasonable 
offer within policy limits to settle a claim for which coverage is disputed and, 
if the claim is later determined not to have been covered, obtain reimbursement 
from the insured. In the present case, we answer “yes”; in Matagorda 
County, the Court said “no”. The Court sees two distinctions in the cases. 
In the present case, the insured (1) had the right to consent to any settlement 
and (2) demanded that the insurer accept the claimant’s settlement offer. 
Neither of these things was true in Matagorda County, but neither 
distinction matters to the decision in either case.
The 
insured’s right to consent to settlement does not matter because neither case is 
about a settlement forced on an insured. The insureds 
in both cases wanted the insurer to settle. The insured in Matagorda 
County “advised [the insurer] that the proposed settlement was reasonable 
and prudent, given the facts and circumstances of the case”;[3] 
it simply refused to contribute to the settlement or to agree to reimburse the 
insurer’s contribution if the claim were determined not to be covered. The 
insured never argued that it would have withheld consent to the settlement had 
it had that right under the policy. Right or no right, the insured in each case 
viewed the proposed settlement exactly the same way. The insureds’ desire in both cases to “have their cake and eat 
it, too” has nothing whatever to do with a right to consent to settlement.
Nor 
does it matter to either case that the insured did or did not demand that the 
insurer accept the settlement offer. The insurer’s duty to settle is triggered 
by a reasonable offer from the claimant[4] 
C 
which was made in each case C 
regardless of whether the insured demands that the offer be accepted. It is the 
existence of this duty and the severe consequences for its breach that forced 
the insurer in each case to accept the settlement offer and seek reimbursement 
from the insured. Now granted, it is harder to sympathize with an insured that, 
instead of sitting mute, demands that its insurer settle a claim and then 
denies its responsibility to fund the settlement when it is later determined 
that there was no coverage, but the insurer’s responsibilities in both cases 
were exactly the same.
Since 
the present case cannot be distinguished from Matagorda County on any 
ground that matters, this case effectively overrules Matagorda County, as 
it should. “[A]n insurer has no duty to settle a claim that is not covered under 
its policy.”[5] 
But to deny an insurer the option of accepting a reasonable settlement though 
coverage is doubtful and then seeking reimbursement from the insured if the 
claim is determined not to be covered forces on the insurer this choice: either 
fund the settlement and abandon all arguments that the claim is not covered, or 
refuse to fund the settlement and if the claim is determined to be covered, face 
liability for the full amount of the claim, even above policy limits,[6] 
plus statutory damages and attorney fees.[7] 
Since the cost of the latter option will almost certainly exceed the cost of 
settlement many times over, an insurer cannot afford to gamble. In both the 
present case and Matagorda County, the insurer ultimately prevailed on 
its arguments of no coverage. Yet the insurer in Matagorda County paid 
$300,000, and the insurer in the present case paid over $7 million, hoping for 
reimbursement, rather than take the chance that they were wrong about coverage. 
When insurers are forced to pay doubtful claims, the premiums paid by 
policyholders who have purchased coverage must be used to satisfy claims against 
policyholders who have not purchased coverage. The rule in Matagorda 
County thus allows a non-covered policyholder to extort payments not only 
from the insurer but from the insurer’s other policyholders. The result in 
Matagorda County was especially egregious because it fell on the public: 
in effect, the Court allowed the Matagorda County Commissioners’ Court to force 
the innocent and unknowing taxpayers of the risk pool’s other member counties to 
pay for damages the members had not agreed to cover.
Justice 
Wainwright’s concurring opinion argues that when “the insurer gives notice of 
its intention to recoup [a settlement] payment in a timely reservation of rights 
letter or makes reimbursement a term or condition of a subsequent agreement”, an 
agreement for the insured to reimburse the payment is implied in fact.[8] 
I agree with this, of course, and said so in Matagorda County,[9] 
but the Court in Matagorda County expressly rejected that view.[10] 
Matagorda County cannot survive reasoning in Justice Wainwright’s concurring 
opinion.
Justice 
O’Neill’s concurrence argues that “absent a consent-to-settlement clause or the 
opportunity for the insured to assume its own defense, an insured [does not] 
necessarily assume[] a reimbursement obligation merely 
by expressing agreement with the insurer’s decision to settle a case.”[11] 
Why an insured should assume an obligation to reimburse an insurer’s settlement 
of a non-covered claim when the insured has the right to consent to settlement 
and does so, but not when he consents though he has no right to do so, is 
baffling. What possible difference can the right to consent make if the insured 
in fact consents? The insured’s obligation to reimburse an insurer’s 
settlement of a non-covered claim depends entirely on the reasonableness of the 
settlement.
Justice 
O’Neill’s concurrence argues that the reasonableness of a settlement depends on 
the availability of insurance or the defendant’s ability to pay. It is true, of 
course, that a claimant is often willing to settle his claim for less than its 
fair value when there is no insurance coverage and the defendant’s assets are 
limited, although that is certainly not always the case. From this observation, 
Justice O’Neill’s concurrence concludes that it is somehow wrong to saddle an 
insured with an obligation to reimburse a settlement paid by the insurer when 
coverage was in doubt, because the claimant might have agreed to a lesser 
settlement, and one within the insured’s means, had coverage been determined not 
to exist. Even if one accepts that a claimant would take less to settle a 
non-covered claim than to settle a claim for which coverage was disputed, 
Justice O’Neill’s concurrence cannot explain how the insured is disadvantaged by 
an obligation to reimburse the settlement in the latter instance. Suppose P’s 
claim is worth $10X but P is convinced that he can extract only $1X from D, who 
is not covered by insurance, so P settles with D for $1X. D pays $1X. But 
suppose D’s liability might be covered by insurance, so the insurer decides to 
pay P the reasonable value of the claim, $10X, and seek reimbursement from D if 
coverage issues are later resolved in the insurer’s favor, rather than face 
liability for much more than $10X if coverage issues are resolved in D’s favor. 
How much does D pay the insurer if there is found to be no coverage? $1X C 
that’s all D has. Justice O’Neill’s concurrence seems to imagine C 
one cannot tell for sure C 
a defendant of limited means who can negotiate a settlement with the claimant 
that is less than his ability to pay, but there is no reason to suppose that a 
claimant would demand less in settlement from a defendant, known to be 
uninsured, than the insurer would demand in reimbursement from the defendant for 
settling a claim later determined not to be covered. A defendant who cannot pay 
the claimant more than $1X cannot reimburse his insurer more than $1X. Justice 
O’Neill’s concurrence states: “I just do not believe that an insured that calls 
upon its insurer to settle a disputed claim necessarily agrees it is willing and 
able to pay the same amount in the event the insurer ultimately prevails in its 
coverage dispute.”[12] 
The statement is, of course, correct; the would-be insured agrees to nothing 
regarding his willingness and ability to pay. But it is also irrelevant. The 
exposure of the defendant of limited means to his insurer is no greater than it 
would be to the claimant.
Perhaps 
it is necessary to stress, again, that no one suggests that an insurer may 
unilaterally settle a claim for an unreasonable amount, or in circumstances that 
actually (rather than hypothetically) prejudice the insured, and then force 
reimbursement from the insured. Neither the present case nor Matagorda 
County involved such a situation. The Court has never been cited to a case 
involving such a situation. In the off-chance that such a situation could arise, 
statutory prohibitions against unfair practices by insurers offer full relief: 
actual damages, additional damages, and attorney fees.[13]
An 
insured should not be allowed to unreasonably withhold consent to settlement to 
force the insurer to pay a claim and abandon coverage issues at the risk of 
incurring stiff statutory liabilities. An insurer’s right to recoup from its 
insured the amount paid to settle a claim depends on two things: the 
reasonableness of the settlement, and coverage. That is the essence of today’s 
decision.
 
________________________________
Nathan L. Hecht
Justice
Opinion 
delivered: May 27, 2005




[1] 52 S.W.3d 128 (Tex. 
2000).

[2] Id. at 136-141 (Owen, J., 
joined by Hecht, J., dissenting).

[3] Id. at 
129.

[4] American Physicians Ins. Exch. v. Garcia, 876 
S.W.2d 842, 848-849 (Tex. 1994); G.A. Stowers Furniture Co. v. Am. Indem. Co., 15 S.W.2d 544, 547‑548 (Tex. Comm’n App. 1929, holding 
approved).

[5] American Physicians, 876 
S.W.2d at 848.

[6] Id. at 
849.

[7] See Tex. 
Ins. Code 
art. 21.21, § 16A, art. 21.55, § 6.

[8] Post at ___.

[9] Matagorda County, 52 S.W.3d at 140 (Owen, J., 
joined by Hecht, J., dissenting) (“If in the case before us, the County had 
demanded that the Association settle the Coseboon litigation after receiving the 
reservation‑of‑rights letter, I would hold that an implied‑in‑fact agreement 
arose, even if the County maintained that there was no obligation to 
reimburse.”).

[10] Id. at 129, 131-133.

[11] Post at ___.

[12] Post at ___.

[13] See Tex. 
Ins. Code 
art. 21.21, § 16A, art. 21.55, 
§ 6.