IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
02-0730
════════════
 
Excess Underwriters at 
Lloyd’s, London and Certain Companies Subscribing Severally but not Jointly to 
Policy No. 548/TA4011FO1, 
Petitioners
 
v.
 
Frank’s 
Casing Crew & Rental Tools, Inc., Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fourteenth District of Texas
════════════════════════════════════════════════════
 
Argued September 24, 2003
 
Justice O’Neill, 
concurring.
I 
agree that the excess underwriters are entitled to reimbursement under the 
circumstances presented in this case. As the Court notes, the insurers could not 
settle without their insured’s consent under the parties’ insurance agreements, 
and Frank’s Casing not only consented to the settlement, but initiated it. For 
this reason, I join Part I and Part II, C and D, of the Court’s opinion. I 
cannot join the remainder, however, for in my view the 
Court’s opinion is unduly broad and based at least in part upon faulty 
assumptions. 
The 
Court holds that an insured may be required to reimburse its insurer for 
settling claims that are ultimately determined to be outside the scope of 
coverage if the insured expressly agrees to the settlement. ___ S.W.3d at ___. In discussing that justification, the 
Court emphasizes that the underwriters in this case could not settle without 
Frank’s consent and distinguishes our decision in Texas Association of 
Counties County Government Risk Management Pool v. Matagorda County, 52 
S.W.3d 128 (Tex. 2000), on that basis. ___ S.W.3d at 
___. I agree because, when the insurance policy requires the insured’s 
consent before a settlement may be reached, the insured has at least some 
control over whether to settle for the offered amount or continue the 
litigation, unlike the situation presented in Matagorda County. In 
Matagorda County, we expressed agreement with the approach other courts 
had taken in recognizing a reimbursement right when the insurer conveys a 
reasonable offer to the insured and gives the insured an opportunity to assume 
the defense. 52 S.W.3d at 134. In that instance, the 
insured retains a level of control similar to that which a consent-to-settlement 
clause confers. Because in Matagorda County the insurer had not given its 
insured the opportunity to assume its own defense, we did not expand on this 
approach. But it is analogous to the situation presented here, in which control 
of Frank’s Casing’s defense did not lie with the underwriters, and the 
underwriters had to obtain Frank’s Casing’s consent before settling the case. 
The implied reimbursement right that we recognize in Part II, C and D, is 
entirely consistent with our decision in Matagorda County.
Accordingly, 
I do not read the Court’s opinion to decide that, absent a consent-to-settlement 
clause or the opportunity for the insured to assume its own defense, an insured 
necessarily assumes a reimbursement obligation merely by expressing agreement 
with the insurer’s decision to settle a case. Those situations contrast with the 
allocation of power set out in the standard homeowner’s or automobile liability 
policies, under which the insurer generally exercises exclusive control over 
settlement decisions. See, e.g., Texas Personal Auto Policy, 
available at http://www.adcusa.com/bain/F15.html (last visited May 26, 
2005); Rodriquez v. Tex. Farmers Ins. Co., 903 S.W.2d 499, 509 (Tex. 
App.BAmarillo 
1995, writ denied); G.A. Stowers Furniture Co. v. 
Am. Indem. Co., 15 S.W.2d 544, 547 (Tex. Comm’n App. 1929, holdings approved); Syverud, The Duty to Settle, 76 Va. L. Rev. 1113, 1118-19 (1990). Under 
those policies, the insurer may not unilaterally impose a right of reimbursement 
that does not appear in the policy with its insured. See Matagorda 
County, 52 S.W.3d at 134. 
Although 
the case could be resolved on the basis I have just discussed, the Court 
ventures beyond. The Court also holds that a reimbursement obligation is implied 
“when an insured has demanded that its insurer accept a settlement offer that is 
within policy limits.” ___ S.W.3d at ___. Citing Stowers, the Court reasons 
that an insured that has demanded that its insurer settle “is deemed to have 
viewed the settlement offer as a reasonable one.” Id. at ___. But the Court’s application of Stowers’s reasoning to this situation makes no sense. 
The Stowers test was designed to define the 
standard of care an insurer must abide by in deciding whether to accept a 
third-party claimant’s settlement demandCit 
measures whether “the terms of the demand are such that an ordinarily prudent 
insurer would accept it, considering the likelihood and degree of the 
insured’s potential exposure to an excess judgment.” Am. Physicians Ins. 
Exch. v. Garcia, 876 S.W.2d 842, 849 (Tex. 1994) (emphasis added). In sum, 
the Stowers test presumes coverage and 
simply has no application in determining an insurer’s reimbursement right when 
coverage is disputed. Id. (“The Stowers 
duty is not activated by a settlement demand unless . . . the claim against the 
insured is within the scope of coverage . . . .”). 
Further, 
the Court’s application of Stowers presumes 
that a settlement’s reasonableness is measured solely by the insured’s potential 
liability exposure irrespective of the insured’s ability to pay. While that 
premise is certainly true when coverage is presumed, as Stowers contemplates, it doesn’t square with reality 
when coverage doesn’t exist. See Syverud, 
supra, at 1114 (noting that “most tort suits would be significantly less 
attractive to plaintiffs and their attorneys” without liability insurance). When 
a defendant lacks coverage, the uninsured’s ability to 
pay becomes the paramount concern driving settlement discussions. If the 
uninsured has assets totaling $100,000, surely it would not behoove an injured 
plaintiff to seek a considerably larger but uncollectible judgment against him. 
Rather, the case will likely settle in the range of what the uninsured can pay 
irrespective of the amount of damages that the injured plaintiff sustained. I 
just do not believe that an insured that calls upon its insurer to settle a 
disputed claim necessarily agrees it is willing and able to pay the same amount 
in the event the insurer ultimately prevails in its coverage dispute. 
Accordingly, I would not hold, as the Court seems to, that an insured assumes a 
reimbursement obligation merely by asking its insurer to accept a settlement 
demand within policy limits.
On 
this disposition, at least, Justice 
Wainwright and I are in agreement. However, I disagree with Justice Wainwright’s conclusion that Frank’s 
Casing assumed a contractual reimbursement obligation in this case by 
acquiescing to the settlement of the underlying lawsuit. In settling the ARCO 
suit, both Frank’s Casing and the excess carriers expressly sought to preserve 
their positions in the coverage dispute; in effect, they agreed to disagree on 
the reimbursement question and let the trial court decide the legal effect. This 
is a far cry from impliedly consenting to reimbursement under the common-law 
contract principles Justice 
Wainwright purports to follow, and ignores the parties’ written agreement 
preserving “any claims that presently exist” between them. As Justice Wainwright recognizes, the 
excess carriers benefitted from the settlement by 
eliminating potential Stowers liability in the 
event ARCO’s claims were later determined to be 
covered, just as Frank’s Casing benefitted by 
eliminating the possibility of a large verdict that might turn out not to be 
covered. Given the parties’ explicit efforts to preserve their positions, it 
makes no more sense to say that Frank’s Casing impliedly agreed to reimburse the 
excess carriers than it would to say that the excess carriers impliedly agreed 
to waive their coverage position. Just as an insured’s acceptance of a defense 
the insurer proffers with a reservation of rights implies the insured’s consent 
to the reservation, the excess underwriters’ agreement to accept the settlement 
in light of Frank’s Casing’s reimbursement contest implied the insurers’ consent 
to Frank’s Casing’s reservation of the reimbursement question. 
Finally, 
I disagree with Justice Wainwright’s implication that our 
decision in Matagorda County eschewed common-law contract 
principles in determining reimbursement rights. Nothing could be further from 
the case. In Matagorda County, we acknowledged those principles would 
apply if their well-established elements were met. According to the seven 
justices who comprised the majority (Justice O’Neill delivered the opinion 
of the Court joined by Chief Justice 
Phillips, Justices Enoch, Baker, Abbott, Hankinson, and 
Gonzales), they were not met in 
that case. 52 S.W.3d at 129. 
I 
agree that Frank’s Casing had an implied-in-law reimbursement obligation because 
it consented to the settlement and the underwriters could not have settled 
without that consent. For this reason, I join Part I and Part II, C and D, of 
the Court’s opinion and concur in the court’s judgment of reversal.
 
____________________________
Harriet 
O’Neill
Justice
 
OPINION DELIVERED: May 
27, 2005