**EXCESS UNDERWRITERS AT LLOYD'S, London and Certain Companies Subscribing Severally but not Jointly to Policy No. 548/TA4011F01, Appellants,**

v.

**FRANK'S CASING CREW & RENTAL TOOLS, INC., Appellee.**

No. 14–01–00349–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 27, 2002.

J. Clifton Hall, III, Natalie Jerae Carlson, Houston, for appellants.

Carl D. Kulhanek, Jr., Christopher W. Martin, Tracy C. Temple, Warren W. Harris, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and FROST.

## OPINION

SCOTT BRISTER, Chief Justice.

Excess Underwriters at Lloyd's, London and Certain Companies Subscribing Severally but Not Jointly to Policy No. 548/TA4011F01 ("the Underwriters") filed this suit against their insured, Frank's Casing Crew & Rental Tools, Inc. ("Frank's"), seeking reimbursement of approximately $7 million the Underwriters paid to settle a claim relating to the collapse of a drilling rig in the Gulf of Mexico. The Underwriters paid the claim even though they alleged it was not covered (at least in part) under the terms of their insurance policy.

Frank's and the Underwriters filed cross-motions for summary judgment on the issues of coverage and reimbursement. After initially ruling in favor of the Underwriters, the trial court reversed itself when the Texas Supreme Court issued *Texas Ass'n of Counties County Government Risk Management Pool v. Matagorda County,* 52 S.W.3d 128 (Tex.2000). Based on that case, the trial court held that the Underwriters had no right to reimbursement and entered a take-nothing judgment in favor of Frank's.

On appeal, the Underwriters assert the trial court should have applied Louisiana law and that doing so would have produced a different result. Alternatively, the Underwriters argue that the *Matagorda County* case is not applicable. Because we disagree with the Underwriters on both counts, we affirm.

Frank's installed a drilling platform in the Gulf of Mexico for Arco Oil & Gas Company. When the platform collapsed several months after installation, Arco and related entities sued Frank's and others in Harris County District Court. Frank's promptly notified its primary insurers as well as its excess insurers—the Underwriters. Frank's primary insurers provided defense counsel. The Underwriters sent Frank's reservation-of-rights letters, contesting coverage of some of the claims made against Frank's.

Shortly before trial in the underlying case, the Underwriters unsuccessfully attempted to settle Arco's claims that they conceded were covered under their policy, leaving unsettled Arco's other claims against Frank's. The Underwriters also offered to settle the policy dispute with Frank's by paying two-thirds of a global settlement with Arco. Finally, the Underwriters offered to provide $5 million for settlement if Frank's agreed to arbitrate all coverage issues. All these offers were refused.

Instead, Frank's asked Arco for a settlement demand within the excess policy limits, and forwarded Arco's $7.5 million demand to the Underwriters. Frank's demanded that the Underwriters pay the full amount, asserting the demand was reasonable and covered by the Underwriters' policy. *See American Physicians Ins. Exch. v. Garcia,* 876 S.W.2d 842, 849 (Tex. 1994) (defining the duty imposed in *G.A. Stowers Furniture Co. v. American Indem. Co.,* 15 S.W.2d 544 (Tex.1929)).

Due to the risk of a larger judgment, the Underwriters decided to fund the entire $7.5 million settlement, without any contribution from Frank's or agreement by Frank's to resolve coverage issues later. On the same day that the Underwriters settled Arco's claims, they informed Frank's they intended to seek reimburse-

ment, and filed this declaratory suit for construction of the policy coverage. Frank's never agreed that the Underwriters had a right to seek reimbursement.

## I. Texas Law

■ In the *Matagorda County* case, the supreme court stated

[W]e hold that, when coverage is disputed and the insurer is presented with a reasonable settlement demand within policy limits, the insurer may fund the settlement and seek reimbursement only if it obtains the insured's clear and unequivocal consent to the settlement and the insurer's right to seek reimbursement.

52 S.W.3d at 135. Here, the uncontested facts show that coverage was disputed, and Arco's settlement demand was reasonable and within policy limits. Thus, the Underwriters could fund the settlement and seek reimbursement only if Frank's unequivocally consented to the settlement *and* the Underwriters' right to seek reimbursement. It is undisputed that Frank's consented to the former, but not the latter. Assuming (as we must) that the supreme court meant exactly what it said, the Underwriters cannot seek reimbursement.

The Underwriters assert *Matagorda County* was limited to its specific facts, and argue this case is distinguishable because (1) the Underwriters are not the primary insurer with a unilateral right to settle the underlying case; (2) the Underwriters did not control the defense and settlement negotiations; (3) Frank's participated in the settlement and agreed to be bound by it; and (4) Frank's responded (rather than remaining silent) to the Underwriters' statement of intent to seek reimbursement. But in *Matagorda County*, the supreme court justified its severe limit on any equitable right to reimbursement[1] on grounds this was necessary to avoid conflicts between insurer and insured, and to protect the insured from having to choose between rejecting the settlement or accepting a financial obligation it could not pay. *See id.*, 52 S.W.3d at 134–35. The court noted that insurers were in a better position to protect themselves by seeking prompt resolution of the coverage dispute in a declaratory action, by drafting better policies, or by raising premiums to cover payments for non-covered claims. *Id.* at 135–36. None of the Underwriters' distinctions affect any of these reasons.

We recognize this case carries *Matagorda County* to a logical conclusion that is somewhat disquieting—Frank's was able to resolve the parties' coverage dispute in its own favor simply by sending a *Stowers* demand to the Underwriters. Thereafter, the Underwriters had to pay if Arco's claims were *within* the policy, but also had to pay *if they are not* within the policy because there was no right to reimbursement. But this is a matter that the Underwriters must take up with the superior court.

## II. Louisiana Law

■ The Underwriters assert that Louisiana law applies. We presume Louisiana law is the same as Texas law unless the Underwriters prove the contrary. *See Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 650 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd'w.o.j.), *leave granted, mand. denied*, 951 S.W.2d 394 (Tex. 1997). We therefore examine the various authorities cited by the Underwriters for that proposition.

The Underwriters cite numerous Louisiana cases holding an insurance company may recover from its insured any policy

---

1. The Underwriters did not assert a contrac-  tual right to reimbursement.

proceeds that are erroneously or mistakenly paid.[2] But in this case the Underwriters were not mistaken; indeed, their eyes were wide open to their dilemma. Louisiana generally does not allow reimbursement to an insurer that pays policy proceeds with knowledge of the facts (as the Underwriters did here). *See Steptore v. Masco Constr. Co., Inc.*, 643 So.2d 1213, 1216–17 (La.1994). Texas law is no different. *See Pennell v. United Ins. Co.*, 150 Tex. 541, 243 S.W.2d 572, 576 (1951). Therefore, these cases do not show Texas and Louisiana law differ.[3]

The Underwriters also cite cases involving express agreements by the insured that preserved the coverage issue for later litigation.[4] But Texas also allows an insurer to settle and seek reimbursement if the insured expressly agrees it may do so. *See Matagorda County*, 52 S.W.3d at 135. In this case, Frank's did not agree that the Underwriters could settle and still litigate coverage issues later. When settlement was announced, counsel for Frank's stated its position that the Underwriters were waiving any coverage issues they had. Again, the cited cases do not show Louisiana law differs from that of Texas.

Finally, the Underwriters assert a claim under Louisiana law for unjust enrichment, citing a general statute and case.

*See* LA. CIV.CODE ANN. art. 2298 (West 2001); *Edmonston v. A–Second Mortgage Co. of Slidell, Inc.*, 289 So.2d 116, 120–23 (La.1974). But these authorities do not apply unjust enrichment in the context of a settlement payment when coverage issues are disputed. This merely begs the question whether Frank's has been "unjustly enriched." The Texas Supreme Court says it has not; nothing in the general principles of Louisiana law proves the contrary.

Because the Underwriters have not shown that Louisiana law would require a different result from Texas law in this case, we presume that both are the same. Applying Texas law according to *Matagorda County*, we overrule the Underwriters' issues and affirm the trial court's judgment.

**2.** *See In re Jeffers*, Nos. Civ.A. 00–3261 & 00–3262, 2001 WL 96401, at *6 (E.D.La. Feb.2, 2001); *Acadia Ins. Agency, L.L.C. v. Transp. Ins. Co.*, No. Civ.A.99–1991, 2000 WL 863975, at *1 (E.D.La. June 27, 2000); *Insurance Co. of N. Am. v. West of Eng. Shipowners Mut. Ins. Ass'n*, 890 F.Supp. 1302, 1310–11 (E.D.La. 1995); *Prudential Ins. Co. of Am. v. Harris*, 748 F.Supp. 445, 447 (M.D.La.1990); *Dear v. Blue Cross of La.*, 511 So.2d 73, 76 (La.Ct. App.1987); *Aetna Cas. & Sur. Co. v. M & A Farms, Ltd.*, 462 So.2d 1323, 1326–27 (La.Ct. App.1985); *Mutual Fire, Marine & Inland Ins. Co. v. Electro Corp.*, 461 So.2d 410, 411–13 (La.Ct.App.1984); *Shelter Ins. Co. v. Cruse*, 446 So.2d 893, 895 (La.Ct.App.1984); *DeVillier v. Highlands Ins. Co.*, 389 So.2d 1133, 1137–38 (La.Ct.App.1980); *Central Sur. & Ins. Corp. v. Corbello*, 74 So.2d 341, 343–44 (La.Ct.App.1954).

**3.** Similarly, we do not see how *United States v. Parish of St. Bernard* applies, as the only reimbursement right mentioned in that case is triggered by fraud. *See* 756 F.2d 1116, 1128 (5th Cir.1985).

**4.** *See T.H.E. Ins. Co. v. Larsen Intermodal Servs., Inc.*, 242 F.3d 667, 673–75 (5th Cir. 2001); *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1176–77 (5th Cir.1992); *Sheeren v. Gulf Ins. Co. of Dallas, Tex.*, 174 So. 380, 384 (La.Ct.App.1937).