IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
02-0730
════════════
 
Excess 
Underwriters at Lloyd’s, London and Certain Companies Subscribing Severally but 
not Jointly to Policy No. 548/TA4011FO1, Petitioners,
 
v.
 
Frank’s 
Casing Crew & Rental Tools, Inc., Respondent
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Fourteenth District of Texas
════════════════════════════════════════════════════
 
 
Argued September 24, 2003
 
 
Justice Owen delivered the opinion of 
the Court, in which Chief Justice 
Jefferson, Justice Hecht, 
Justice Medina and Justice Green joined. Justice O’Neill joined in Part I and 
Part II, C and D, and Justice 
Wainwright joined in Part II, C.
Justice Hecht filed a concurring 
opinion.
Justice O’Neill filed a concurring 
opinion.
Justice Wainwright filed a concurring 
opinion.
Justice Brister and Justice Johnson did not participate in 
the decision.
 
The 
issue in this case is whether excess insurance carriers that disputed coverage 
but that settled third-party claims against their insured are entitled to recoup 
the settlement payments from their insured when it was subsequently determined 
that the claims against the insured were not covered. There was no express 
agreement allowing reimbursement. The trial court granted summary judgment for 
the insured, holding there was no right to reimbursement, and the court of 
appeals affirmed.[1] 
Both courts concluded that this Court’s decision in Texas Association of 
Counties County Government Risk Management Pool v. Matagorda County[2] 
was controlling. Because the facts at issue in that case differ from those 
before us today, and because we are persuaded that a right of recoupment can arise even absent an insured’s express 
agreement to reimburse settlement payments made by an insurer if there is no 
coverage, Matagorda County does not foreclose reimbursement in this case. 
We accordingly reverse the court of appeals’ judgment and remand this case to 
the trial court to enter judgment in the excess underwriters’ favor.
I
Frank’s 
Casing Crew & Rental Tools, Inc. fabricated a drilling platform at its 
facility in Louisiana for ARCO/Vastar. The platform 
was installed in the Gulf of Mexico and collapsed several months later. ARCO 
sued Frank’s Casing, among others.
Frank’s 
Casing had a primary liability policy with limits of $1 million, and 
Frank’s Casing had obtained excess coverage of up to $10 million from 
Certain Companies Subscribing Severally But Not Jointly To Policy No. 
548/TA4011F01 and Excess Underwriters at Lloyd’s, London (whom we will call the 
excess underwriters). The excess underwriters issued reservation of rights 
letters in which they asserted that certain of ARCO’s 
claims against Frank’s Casing were not covered.
The 
primary carrier retained defense counsel for Frank’s Casing. ARCO made a 
pre-trial settlement offer of $9.9 million, which Frank’s Casing rejected. Two 
weeks before trial, the excess underwriters contacted ARCO directly, without 
Frank’s Casing’s knowledge, and attempted to settle only the claims the 
underwriters were willing to concede were covered. No agreement was reached. 
ARCO subsequently offered to settle all claims against all defendants for $8.8 
million, which would have required Frank’s Casing to contribute about 
$7.55 million. The excess underwriters proposed to Frank’s Casing that the 
underwriters pay two-thirds of that amount, that Frank’s Casing pay one-third, 
and that all coverage issues would be waived by the underwriters. In the 
alternative, the underwriters proposed that they pay $5 million and that 
all coverage issues be resolved in arbitration. Frank’s Casing did not accept 
either proposal.
As 
trial approached, the excess underwriters retained counsel to associate with 
Frank’s Casing and its primary carrier in the defense of ARCO’s claims, as the underwriters were entitled to do under 
the excess liability policy.[3] 
ARCO’s suit against Frank’s Casing proceeded to trial, 
and it readily became apparent that Frank’s Casing was the target defendant. By 
the close of the second day of trial, Frank’s Casing’s in-house counsel had 
contacted ARCO and requested that it make a settlement demand within the excess 
policy’s limits, suggesting $7 million. ARCO promptly responded with a demand of 
$7.5 million, which Frank’s Casing communicated to the excess underwriters 
accompanied by a demand that the underwriters accept this offer, thus “Stowerizing” the excess underwriters.[4] 
The underwriters agreed that the case should be settled for this amount and 
stated that they would fund the settlement up to $7.5 million, less any 
contribution from the primary carrier, if Frank’s Casing would expressly agree 
that all coverage issues would be resolved at a later date. Frank’s Casing 
refused and sent a second letter demanding that the underwriters accept ARCO’s settlement offer. The excess underwriters then 
advised Frank’s Casing that they would pay $7.5 million, less any contribution 
from the primary carrier, and seek reimbursement from Frank’s Casing. That same 
day, the underwriters contacted ARCO and orally accepted the settlement offer. 
The primary carrier simultaneously tendered its remaining policy limits, 
approximately $500,000, to settle the lawsuit.
The 
excess insurance policy required Frank’s Casing’s approval of any settlement,[5] 
and it gave that approval. A written settlement agreement among ARCO, Frank’s 
Casing and the excess underwriters preserved “any claims that exist presently” 
between Frank’s Casing and the underwriters. Prior to that agreement’s 
execution, the excess underwriters had filed this suit against Frank’s Casing 
for reimbursement, and Frank’s Casing had answered.
In 
the coverage litigation, the excess underwriters and Frank’s Casing filed cross 
motions for summary judgment. Among the issues presented to the trial court was 
whether Texas or Louisiana law governed, and the trial court applied Texas law. 
The trial court initially dismissed Frank’s Casing’s counterclaims and granted 
three separate motions for partial summary judgment for the excess underwriters, 
finding that none of ARCO’s claims against Frank’s 
Casing were covered, requiring Frank’s Casing to reimburse the excess 
underwriters, and awarding the underwriters $7,013,612.00. Shortly thereafter, 
however, this Court issued Texas Association of Counties County Government 
Risk Management Pool v. Matagorda County.[6] 
The trial court then directed Frank’s Casing to file a motion for new trial only 
on the issue of reimbursement, and Frank’s Casing complied. After further 
briefing and another hearing, the trial court withdrew its order granting 
partial summary judgment on the reimbursement issue and signed a take-nothing 
judgment against the excess underwriters.
The 
court of appeals affirmed, although it noted: “We recognize this case carries 
Matagorda County to a logical conclusion that is somewhat disquieting 
B 
Frank’s was able to resolve the parties’ coverage dispute in its own favor 
simply by sending a Stowers demand to the 
Underwriters. . . . But this is a matter that the Underwriters 
must take up with the superior court.”[7] 
The excess underwriters petitioned this Court for review, and we granted that 
petition.
We 
conclude that the law of both Texas and Louisiana entitle an insurer to 
reimbursement under the facts of this case. Accordingly, we do not decide which 
state’s law governs. We first consider Texas law.
II
In 
Matagorda County, the County was sued after inmates armed with razor 
blades physically and sexually assaulted other inmates in the County’s jail.[8] 
The County’s policy with the Texas Association of Counties’ risk pool 
specifically excluded any claim arising out of the operation of the jail.[9] 
The risk pool nevertheless agreed to defend the inmates’ suit against the County 
with a reservation of rights and concurrently sought a declaratory judgment that 
the inmates’ claims were not covered.[10] 
Before the declaratory judgment action was resolved, the inmate plaintiffs 
offered to settle their suit against the County for $300,000, which was within 
policy limits.[11] 
The County advised the risk pool that this was a reasonable settlement offer,[12] 
but did not ask the risk pool to accept the offer and refused to fund the 
settlement itself, insisting that there was coverage.[13] 
The risk pool then sent the County a letter, reasserting its position that there 
was no coverage, but advising the County that the risk pool would fund the 
settlement and then seek reimbursement from the County in the declaratory 
judgment action.[14] 
The County did not respond, and the risk pool settled the inmates’ claims.[15] 
The County subsequently stipulated in the declaratory judgment action that the 
settlement amount was reasonable.[16] 
This Court held that an implied-in-fact agreement that the risk pool could seek 
reimbursement could not be found from the County’s silence in response to the 
risk pool’s letter stating it would seek reimbursement after it funded the 
settlement.[17] 
The Court also concluded that the doctrine of equitable subrogation did not 
apply.[18] 
Finally, the Court concluded that the quasi-contractual theories of quantum 
meruit and unjust enrichment should not be applied.[19] 
In resolving these issues, the Court’s opinion said that the risk pool was not 
entitled to reimbursement unless the insured “consent[ed] to the settlement and 
the insurer’s right to seek reimbursement.”[20]
A
In 
Matagorda County, the insurer had the unilateral right to settle claims 
against the insured without the insured’s consent.[21] 
One of the chief concerns expressed by the Court in Matagorda County was 
that when an insurer has the unilateral right to settle, an insurer could accept 
a settlement that the insured considered out of the insured’s financial reach, 
and the insured could be required to reimburse the insurer for that amount.[22] 
“[T]he insured is forced to choose between rejecting a settlement within policy 
limits or accepting a possible financial obligation to pay an amount that may be 
beyond its means, at a time when the insured is most vulnerable.”[23] 
The facts of the case before us today lead us to conclude that this concern is 
ameliorated if not eliminated in at least two circumstances:
 
1)         
when an insured has demanded that its insurer accept a settlement offer 
that is within policy limits, or
2)         
when an insured expressly agrees that the settlement offer should be 
accepted.
 
In 
these situations, the insurer has a right to be reimbursed if it has timely 
asserted its reservation of rights, notified the insured it intends to seek 
reimbursement, and paid to settle claims that were not covered.
B
The 
insured in this case, Frank’s Casing, specifically demanded that the excess 
underwriters accept and fund ARCO’s settlement offer. 
Even when a claim is covered, an insurer has no duty to accept a settlement 
offer within policy limits unless “an ordinarily prudent person, in the exercise 
of ordinary care, as viewed from the standpoint of the assured, would have.”[24] 
When Frank’s Casing “Stowerized” the excess 
underwriters, it could not thereafter take the inconsistent position that the 
settlement offer was reasonable if the insurer bore the cost of settling but 
unreasonable if the insured ultimately bore the cost. Once an insured asserts 
that a settlement offer has triggered a Stowers 
duty, and the insurer then accepts that settlement offer or a lower one, the 
insured is estopped from asserting that the settlement 
is too financially burdensome for the insured to bear if it turns out the claims 
against the insured are not covered.
We 
have said that the duty imposed by Stowers is 
to “exercise ‘that degree of care and diligence which an ordinarily prudent 
person would exercise in the management of his own business.’”[25] 
We have also said that the Stowers duty is 
viewed from the perspective of an insurer: “the terms of the demand are such 
that an ordinarily prudent insurer would accept it.”[26] 
Both statements are correct. Whether a settlement offer within policy limits is 
a reasonable one is determined by an objective standard based on an assessment 
of the likelihood that the insured will be found liable and the range of 
potential damages for which the insured may be held liable, including “the 
likelihood and degree of the insured’s potential exposure to an excess 
judgment.”[27] 
The reasonableness of a settlement offer is not judged by whether the insured 
has no assets or substantial assets, or whether the limits of insurance coverage 
greatly exceed the potential damages for which the insured may be liable. It is 
an objective assessment of the insured’s potential liability.
When 
there is a coverage dispute and an insured demands that its insurer accept a 
settlement offer within policy limits, the insured is deemed to have viewed the 
settlement offer as a reasonable one. If the offer is one that a reasonable 
insurer should accept, it is one that a reasonable insured should accept if 
there is no coverage. The insured knows that if the case is not settled, a 
judgment may be rendered against it for which there is no insurance coverage. 
Typically, a party considers a settlement reasonable when there is a substantial 
risk that if the case proceeds to trial, a judgment larger than the settlement 
offer will be entered against it. Requiring an insured to reimburse its insurer 
for settlement payments if it is later determined there was no coverage does not 
prejudice the insured. The insured’s substantial exposure to a judgment against 
it greater than the settlement amount has been eliminated, at its insistence, 
and by its own admission the settlement amount was reasonable. The insured is in 
the same, or at least no worse, position than it would have been in if there had 
been no policy. Insurance coverage should not be created where none exists 
merely because an insured could not afford to pay a judgment if the case were 
tried or to fund a settlement demand from an injured third party. The insurer 
should be entitled to settle with the injured party for an amount the insured 
has agreed is reasonable and to seek recoupment from 
the insured if the claims against it were not covered. From the insured’s point 
of view, it is in precisely the same position it would have been in absent any 
insurance policy, except that the insurer is now the insured’s creditor rather 
than the injured third party.
Reimbursement 
rights encourage insurers to settle cases even when coverage is in doubt.[28] 
This inures to the benefit of injured third parties. When an insurer settles a 
claim for which coverage is in doubt, the risk that the insured lacks the 
resources to fund a settlement is shifted to the insurer and is lifted from the 
injured plaintiff who sued the insured.[29] 
The coverage dispute between an insured and its insurer can be resolved after 
the injured plaintiff is compensated. Thus, an injured plaintiff’s risk that the 
defendant has no coverage and may be financially unable to fully compensate the 
plaintiff is lessened.
Whether 
the insurer or the insured ultimately bears the cost of a reasonable settlement 
with a third party should depend on whether there is coverage. As pointed out by 
the California Supreme Court and our own court of appeals in the present case, 
denying a right of reimbursement once an insured has demanded that an insurer 
accept a reasonable settlement offer from an injured third party can 
significantly tilt the playing field.[30] 
The insurer would have only two options. It could refuse to settle and face a 
bad faith claim if it is later determined there was coverage. Or it could settle 
the third-party claim with no right of recourse against the insured if it is 
determined there was no coverage, which effectively creates coverage where there 
was none.[31] 
As the California Supreme Court concluded, “[R]eimbursement should be available because the insurer had not 
bargained to bear these costs and the insured had not paid the insurer premiums 
for the risk.”[32]
C
A 
second situation in which reimbursement will be permitted is when there is a 
coverage dispute, the insured has expressly agreed the third party’s settlement 
offer should be accepted, and the insurer has notified the insured that it 
intends to seek reimbursement. In Matagorda County, the County agreed 
that the settlement amount was reasonable.[33] 
But the risk pool had the right to, and did, settle without the County’s 
consent.[34] 
Here, the underwriters could not settle without Frank’s Casing’s consent. 
Frank’s Casing had the option of continuing the litigation. Frank’s Casing made 
an informed decision between continuing to defend ARCO’s suit and consenting to settle that litigation, 
knowing that the excess underwriters intended to pursue coverage issues and to 
seek reimbursement of the amount paid in settlement. The insured had control 
over whether to settle for the sum offered by ARCO or continue the litigation. 
An insured who agrees to the settlement and benefits by having claims against it 
extinguished cannot complain that it must reimburse its insurer if the claims 
against the insured were not covered by its policy.
D
In 
cases such as the one presently before us, an agreement to reimburse an insurer 
is implied in law.[35] 
It is quasi-contractual.[36] 
In Matagorda County, this Court held that a quasi-contract did not arise 
under the facts of that case.[37] 
In explaining why, the Court cited three cases and a law review article for the 
proposition that “the few courts that have considered the 
settlement-reimbursement question have generally opted to recognize a 
reimbursement right only if the insured has authorized the settlement and agreed 
to reimburse the insurer should the insurer prevail on its coverage defense.”[38] 
The three cases cited were Medical Malpractice Joint Underwriting Association 
of Massachusetts v. Goldberg,[39] 
Mt. Airy Insurance Co. v. Doe Law Firm,[40] 
and Val’s Painting & Drywall, Inc. v. Allstate Insurance Co.[41] 
However, only one of those decisions, Mt. Airy, held that reimbursement 
is limited to the circumstance in which there was an express agreement that the 
insurer would be entitled to reimbursement if there was no coverage.[42] 
Val’s Painting held that even absent an express or implied-in-fact 
agreement, an insurer may obtain reimbursement if “it has secured specific 
authority to make that settlement or has notified the insured of a reasonable 
offer by the claimant and given the insured an opportunity to assume the 
defense.”[43] 
Goldberg, extensively relied on in Matagorda County,[44] 
expressly agreed with Val’s Painting that reimbursement is required when 
the insured had been given the opportunity to assume its own defense after 
notification of a reasonable settlement offer.[45] 
Goldberg held “an insurer [who] defends under a reservation of rights to 
later disclaim coverage . . . may later seek reimbursement for an 
amount paid to settle the underlying tort action” if the “insurer [has] notif[ied] the insured of a 
reasonable settlement offer and give[n] the insured an opportunity to accept the 
offer or assume its own defense.”[46] 
Similarly, the law review article cited in Matagorda County concluded 
that “[m]ost courts to consider this question have 
held that the insurer can obtain reimbursement of settlement funds if the 
insured has authorized the settlement and agreed to reimburse the insurer in the 
event the insurer prevails on the coverage issue, or if the insurer has 
notified the insured of a reasonable offer and given the insured the opportunity 
to assume the defense.”[47] 
After citing these three cases and the law review article, Matagorda 
County said, “We agree with this approach.”[48]
Two 
statements in Matagorda County did not, however, fully set forth the 
“approach” taken by three of the four authorities relied upon. Those two 
statements in Matagorda County were that “the few courts that have 
considered the settlement‑reimbursement question have generally opted to 
recognize a reimbursement right only if the insured has authorized the 
settlement and agreed to reimburse the insurer should the insurer prevail on its 
coverage defense,”[49] 
and
 
when 
coverage is disputed and the insurer is presented with a reasonable settlement 
demand within policy limits, the insurer may fund the settlement and seek 
reimbursement only if it obtains the insured’s clear and unequivocal consent to 
the settlement and the insurer’s right to seek reimbursement. See 
Goldberg, 680 N.E.2d at 1129.[50]
 
To 
the extent Matagorda County indicated that the only circumstance 
under which an insurer may obtain reimbursement from an insured for settlement 
payments when there is no coverage is when there is an express agreement that 
there is a right to seek reimbursement, we clarify that there are additional 
circumstances that will give rise to a right of reimbursement. Those include the 
circumstances in the case presently before us.
III
The 
Louisiana courts have not considered whether an insurer is entitled to 
reimbursement from its insured when it pays to settle claims against its insured 
that are not covered. However, it appears that under Louisiana law there would 
be a right to reimbursement in this case.
The 
Louisiana Civil Code provides a remedy when a person “has been enriched without 
cause at the expense of another person.”[51] 
The Code says,
 
A 
person who has been enriched without cause at the expense of another person is 
bound to compensate that person. The term “without cause” is used in this 
context to exclude cases in which the enrichment results from a valid juridical 
act or the law. The remedy declared here is subsidiary and shall not be 
available if the law provides another remedy for the impoverishment or declares 
a contrary rule.
 
The 
amount of compensation due is measured by the extent to which one has been 
enriched or the other has been impoverished, whichever is less.
 
The 
extent of the enrichment or impoverishment is measured as of the time the suit 
is brought or, according to the circumstances, as of the time the judgment is 
rendered.[52]
 
This 
section was enacted in 1995. The commentary to this section notes that “[i]t expresses the principle of enrichment without cause that 
was inherent but not fully expressed in the Louisiana Civil Code of 1870. The 
formulation of the principle accords with civilian doctrine and 
jurisprudence.”[53]
A decision of 
the Supreme Court of Louisiana that preceded the promulgation of this provision 
illuminates the principles of Louisiana law it embodies. In Edmonston v. A-Second Mortgage Co. of Slidell, 
Inc., Edmonston and her husband obtained a loan 
from Standard Life Insurance Company.[54] 
To secure the loan, Edmonston mortgaged her separate 
property. Standard also required the couple to insure their lives and assign the 
policies to Standard. The assignment provided that any proceeds of the policy 
would be used to discharge the mortgage or would be paid to the beneficiary, at 
the survivor’s option. The couple later obtained a loan from A-Second Mortgage 
Company, and Edmonston gave that company a second 
mortgage on her property. Thereafter, the couple deeded the property to A-Second 
in satisfaction of its mortgage as well as the outstanding debt to Standard. 
Instead of immediately paying off the debt to Standard, A-Second agreed to make 
all payments on the Standard loan as they became due. Edmonston’s husband subsequently died. Although A-Second had 
assumed the couple’s obligation to repay the Standard loan, Standard had never 
released Edmonston or her husband from liability. She 
and Standard agreed that the proceeds of her husband’s life insurance policy, 
$16,000, should be applied to pay off the Standard loan, which had a balance of 
about $14,500, with the remainder to be paid to Edmonston. Edmonston then sued 
A-Second to recover the $14,500, apparently realizing she had discharged a debt 
that she had already paid A-Second to discharge on her behalf. The Louisiana 
Supreme Court recognized that Edmonston had no 
obligation to A-Second to pay Standard’s note and that “A-Second received a 
benefit they had never bargained for, the discharge of its obligation to 
Standard.”[55] 
The court held that Edmonston was entitled to 
restitution, reasoning, “[s]he has, in effect, paid the debt of another and the 
actual benefit to A-Second cannot be questioned.”[56]
Under the 
rationale of Edmonston and the provisions of 
article 2298, it appears that Louisiana law would permit the excess underwriters 
to obtain reimbursement from Frank’s Casing. Accordingly, the result under 
Louisiana and Texas law would be the same, and we need not engage in a conflict 
of laws analysis to determine which state’s law applies.
* * * * *
For 
the reasons set forth, we reverse the court of appeals’ judgment and remand this 
case to the trial court to render judgment in favor of the excess underwriters 
consistent with this opinion.
 
________________________________
Priscilla 
R. Owen
Justice
 
OPINION 
DELIVERED: May 27, 2005




[1] 93 S.W.3d 178, 179.

[2] 52 S.W.3d 128 (Tex. 2000).

[3] The policy provides:
 
The Underwriters shall not be called upon to assume 
charge of the settlement or defense of any claim made or suit brought or 
proceeding instituted against the Assured but Underwriters shall have the right 
and shall be given the opportunity to associate with the Assured or the Assured’s underlying insurers or both in the defense and 
control of any claim, suit or proceeding relative to an occurrence where the 
claim or suit involves, or appears reasonably likely to involve Underwriters, in 
which event the Assured and Underwriters shall co-operate in all things in the 
defense of such claim, suit or proceeding.

[4] See G.A. Stowers Furniture 
Co. v. Am. Indemn. Co., 15 S.W.2d 544, 547 (Tex. 
Comm’n App. 1929, holdings 
approved).

[5] The policy provided: “The Assured shall make a definite 
claim for any loss for which the Underwriters may be liable under this policy 
within twelve (12) months . . . after the Assured’s liability shall have been fixed and rendered 
certain either by final judgment against the Assured after actual trial or by 
written agreement of the Assured, the claimant, and 
Underwriters.”

[6] 52 S.W.3d 128 (Tex. 2000).

[7] 93 S.W.3d at 180.

[8] 52 S.W.3d at 129.

[9] Id.

[10] Id.

[11] Id.

[12] Id. at 129.

[13] Id. at 130.

[14] Id.

[15] Id.

[16] Id.

[17] Id. at 131-33.

[18] Id. at 134.

[19] Id.

[20] Id. at 135.

[21] Id. at 130.

[22] Id. at 135.

[23] Id.

[24] G.A. Stowers Furniture Co. 
v. Am. Indemn. Co., 15 S.W.2d 544, 547 (Tex. Comm’n App. 1929, holdings 
approved).

[25] Am. Physicians Ins. Exch. v. Garcia, 876 S.W.2d 
842, 848 (Tex. 1994) (quoting Stowers, 15 
S.W.2d at 547).

[26] Id. at 849 (“The Stowers duty is not activated by a settlement demand 
unless three prerequisites are met: (1) the claim against the insured is 
within the scope of coverage, (2) the demand is within the policy limits, 
and (3) the terms of the demand are such that an ordinarily prudent insurer 
would accept it, considering the likelihood and degree of the insured’s 
potential exposure to an excess judgment.”).

[27] Id.

[28] See Blue Ridge Ins. Co. v. Jacobsen, 22 P.3d 
313, 321 (Cal. 2001).

[29] Id.

[30] See id. (observing that the insured’s objection 
to a reservation of rights “would create coverage contrary to the parties’ 
agreement in the insurance policy and violate basic notions of fairness”); 
Excess Underwriters, 93 S.W.3d at 180 (observing that denying 
reimbursement was “somewhat disquieting B Frank’s was able to resolve the parties’ coverage 
dispute in its own favor simply by sending a Stowers demand to the 
Underwriters”).

[31] Blue Ridge, 22 P.3d at 321; Excess 
Underwriters, 93 S.W.3d at 180.

[32] Blue Ridge, 22 P.3d at 320 (citing Buss v. 
Superior Court, 939 P.2d 766, 776 (Cal. 1997)).

[33] Tex. Ass’n of Counties 
County Gov’t Risk Mgmt. Pool v. Matagorda County, 
52 S.W.3d 128, 130 (Tex. 2000).

[34] Id.

[35] Blue Ridge, 22 P.3d at 320 (“‘The insurer 
therefore has a right of reimbursement that is implied in law as 
quasi-contractual, whether or not it has one that is implied in fact in the 
policy as contractual.’” (quoting Buss, 939 P.2d at 
776)).

[36] Id.

[37] 52 S.W.3d at 134.

[38] Id.

[39] 680 N.E.2d 1121 (Mass. 
1997).

[40] 668 So. 2d 534 (Ala. 1995).

[41] 126 Cal. Rptr. 267 (Cal. Ct. 
App. 1975).

[42] 668 So. 2d at 538.

[43] 126 Cal. Rptr. at 
274.

[44] Tex. Ass’n of Counties 
County Gov’t Risk Mgmt. Pool v. Matagorda County, 
52 S.W.3d 128, 133, 134-35 (Tex. 2000).

[45] Med. Malpractice Joint Underwriting Ass’n of Mass. v. Goldberg, 680 N.E.2d 1121, 1129 n.30 
(Mass. 1997) (“We recognize that Val’s Painting is the holding from 
another jurisdiction. We nevertheless find its reasoning 
sound.”).

[46] Id. at 1129.

[47] Jerry, The Insurer’s Right to Reimbursement of 
Defense Costs, 42 Ariz. L. 
Rev. 13, 70 n.220 (2000) (emphasis added). This footnote said in its 
entirety:
 
A similar question can be asked of the indemnity 
obligation: Is it possible, in circumstances where the defense is being provided 
under reservation to contest coverage, for the insurer to settle the underlying 
litigation and reserve a right to obtain reimbursement of the settlement amounts 
in the event it is determined that the plaintiff’s claim(s) against the insured 
are outside the coverage? In this situation, like the reimbursement of defense 
costs situation, the insurer performs an obligationBindemnityBwhile reserving a right to claim that the indemnity duty 
was not owed on account of lack of coverage and to retrieve the funds that were 
advanced to resolve the underlying claim. Most courts to consider this question 
have held that the insurer can obtain reimbursement of settlement funds if the 
insured has authorized the settlement and agreed to reimburse the insurer in the 
event the insurer prevails on the coverage issue, or if the insurer has notified 
the insured of a reasonable offer and given the insured the opportunity to 
assume the defense. See, e.g., Mt. Airy Ins. Co. v. Doe Law Firm, 
668 So. 2d 534 (Ala. 1995); Johansen v. California State Auto. Ass’n Inter-Ins. Bur., 538 P.2d 744, 750 (Cal. 1975); Val’s 
Painting and Drywall, Inc. v. Allstate Ins. Co., 126 Cal. Rptr. 267, 273-74 (Ct. App. 1975); Medical Malpractice Joint 
Underwriting Ass’n v. Goldberg, 680 N.E.2d 1121, 
1127-29 (Mass. 1997); Matagorda County v. Texas Ass’n 
of Counties County Gov’t Risk Mgmt. Pool, 975 S.W.2d 
782 (Tex. Ct. App. 1998), review granted (June 29, 1999). This, however, 
is not inconsistent with the analysis, developed in the text, that the insured’s 
express agreement to the insurer’s claim of right to reimbursement of defense 
costs is not needed. As with reimbursement of defense costs, see supra 
note 45, a specific policy provision authorizing reimbursement of settlement 
funds in the event the insurer prevails on the coverage issue is enforceable. 
See National Cas. Co. v. Lane Express, Inc., 
05‑96‑00444‑CV, 1999 WL 219437 (Tex. Ct. App. Apr. 16, 
1999).

[48] 52 S.W.3d at 135.

[49] Id. at 134.

[50] Id. at 135.

[51] La. Civ. 
Code art. 2298.

[52] Id.

[53] Id. revision cmts. 
(1995).

[54] 289 So. 2d 116, 118 (La. 
1974).

[55] Id. at 121.

[56] Id. at 
122.