COURT OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
  
 WARREN E & P, INC., f/k/a PETROLEUM
 DEVELOPMENT CORPORATION d/b/a PEDECO, INC., WARREN RESOURCES, INC., and OIL
 TECHNOLOGY FUND 1996 – SERIES D, L. P.,
                       
   Appellants/Cross-Appellees,
  
 v.
                                             
 GOTHAM INSURANCE COMPANY,
                            
 Appellee/Cross-Appellant.
 
 
  
   '
     
   '
     
   '
     
   '
     
   '
     
 '
  
  
  
  
  
 
 
  
  
                   No. 08-10-00198-CV
  
 Appeal from the
  
 81st
 District Court
  
 of Frio
 County, Texas
  
 (TC# 98-02-00039CVF)
  
 
 


O P I N I O N

This is the third appeal that has arisen from
a dispute relating to the payment of insurance proceeds following an oil well
blow-out.[1]  The first appeal was resolved in Gotham Ins. Co. v. Petroleum Development Corp.,
No. 04-01-00375-CV, 2003 WL 21696625 (Tex. App.--San Antonio, July 23, 2003,
pet. denied) (mem. op.) (Gotham I).  The second appeal was resolved in Warren E & P, Inc.,f/k/a Petroleum
Development Corp. d/b/a Pedeco, Inc., et al. v. Gotham Ins. Co., No.
04-05-00186-CV, 2006 WL 1080246 (Tex. App.--San Antonio, April 26, 2006, pet.
denied) (mem. op.) (Gotham II).  In this third appeal, Warren E & P, Inc.,
f/k/a Petroleum Development Corporation d/b/a Pedeco, Inc., Warren Resources, Inc.,
and Oil Technology Fund 1996 -- Series D, L. P., appeal from the trial court’s
summary judgment in favor of Gotham Insurance Company.  Gotham cross-appeals.  We reverse.

BACKGROUND

            In April of 1996,
Pedeco, Inc., a New Mexico oil and gas concern, decided to operate in Texas and
sought assistance from a Texas company, R. W. Dirks Petroleum Engineers, Inc.  Pedeco and Dirks entered into a business agreement,
under which Dirks agreed to serve as the record operator of Pedeco’s Texas
wells until Pedeco obtained its official Texas registration.  The agreement also charged Dirks with
obtaining well-control insurance.

In May of 1996, Dirks obtained from Gotham Insurance
Company a $2,000,000 well-control insurance policy.  Dirks was the named insured (or “assured”) in
the policy.  Under the terms of the policy,
Gotham agreed to:

[R]eimburse the Assured for actual costs and/or expenses
incurred by the Assured [in proportion to the Assured’s ownership interest] (a)
in regaining or attempting to regain control of any and all well(s) insured
hereunder which get(s) out of control . . . and (b) in extinguishing or
attempting to extinguish . . . fires . . . which may endanger the well(s)
insured hereunder.

 

            The
insurance policy also contained a “care, custody, and control” endorsement, under
which Gotham agreed to:

[C]over the Assured’s legal or contractual liability as oil
lease operator(s) (or Co-Venturer(s) where applicable) [in proportion to the Assured’s
ownership interest] for physical loss or damage to, or expenses of salvage of,
oil field equipment . . . leased or rented by the Assured or in its care,
custody and control at the site.  

 

In December of 1996, Pedeco entered into a
joint operating agreement (“JOA”) with Warren Resources, Inc. (“WRI”), a New
York company that solicited investors to create limited partnerships to fund
oil well drilling and then acted as the limited partnerships’ managing general
partner.  Also party to the JOA was one
of WRI’s limited partnerships, Oil Technology Fund 1996 -- Series D, L. P.
(“the Fund”).  According to Norman
Swanton, WRI’s chief executive officer, the Fund took “the responsibility to
drill the wells,” while WRI and Pedeco “agree[d] to supply the tangible
equipment and costs on those wells.”  Among
the oil and gas leases listed in the JOA was the Halff-Oppenheimer Well (“H
& O Well”) in Frio County.

In January of 1997, Dirks asked Gotham to
add Pedeco as an additional insured in the well-control insurance policy
because, according to Dirks, Pedeco owned a non-operating working interest in
22 of Dirks’ wells.  Based on that
information, Gotham added an endorsement to the policy naming Pedeco as an
additional insured.  Unlike Dirks and
Pedeco, WRI and the Fund did not obtain well-control insurance.

On July 21, 1997, Pedeco filed a drilling
permit with the Texas Railroad Commission, listing Pedeco as the operator of
record of the H & O Well.  On July
27, 1997, the H & O Well blew out and caught fire, destroying Stricker
Drilling Company’s drilling rig, third-party contractors’ equipment, and
neighboring landowners’ crops and fences.  That same day, Gotham received notice of the
blow-out and assigned adjusters from Rush Johnson Associates to investigate.  Rush Johnson later reported to Gotham that the
losses from the blow-out would exceed the policy limits.  Rush Johnson also reported to Gotham that
Pedeco representatives had advised one of the Rush Johnson adjusters that
Pedeco owned a 100 percent working interest in the H & O Well and was
operating it at the time of the blow-out.  That representation regarding Pedeco’s 100
percent working interest was repeated in 1997 in the sworn proofs of loss
submitted by Dirks and Pedeco to Gotham. 
Based on those and other representations, Gotham’s attorneys recommended
that it pay Pedeco’s claims.

            To
facilitate payment, the parties entered into an escrow agreement, under which
Gotham paid the policy benefits into Rush Johnson’s escrow account “to be held
in escrow for R. W. Dirks Petroleum Engineers, Inc. and Pedeco, Inc. for
payment direct to vendors of adjusted and approved claim amounts.”

            In March or April
of 1998, an adjuster from Rush Johnson advised Gotham’s attorneys that Stricker
Drilling Company and several third-party contractors had filed a lawsuit (“the
Frio County lawsuit”) alleging that Pedeco had not acted as a reasonably
prudent operator and had used substandard blow-out prevention equipment.  After learning of the allegations in the Frio
County lawsuit, Gotham commenced an investigation, ultimately stopped payment
on Pedeco’s unpaid claims, notified Pedeco of its decision, and then, in May of
1999, intervened in the Frio County lawsuit with claims against Pedeco, WRI,
and the Fund, seeking equitable restitution of the insurance benefits paid on
behalf of Pedeco.  Pedeco counterclaimed
for breach of contract, bad faith, and violations of the Texas Insurance Code.

            Each of the
parties moved for summary judgment on each of the claims and counterclaims.  The trial court granted summary judgment in
favor of Pedeco, WRI, and the Fund on Gotham’s reimbursement claim, in favor of
Gotham on Pedeco’s counterclaims for bad faith and violations of the Texas Insurance
Code, and in favor of Pedeco on its counterclaim for breach of contract, rendering
judgment in Pedeco’s favor for $271,741.88, attorney’s fees, and interest.  Gotham appealed, and Pedeco cross-appealed.  The Fourth Court of Appeals affirmed the trial
court’s summary judgment in favor of Gotham on Pedeco’s counterclaims for bad
faith and violations of the Texas Insurance Code, reversed the trial court’s
summary judgment in all other respects, and remanded the case for further
proceedings.  The Fourth Court explained
its decision, in part, as follows:

            Gotham argues
the trial court erred in denying its motion for summary judgment on Pedeco’s
breach of contract claim and instead granting Pedeco’s, because the summary
judgment record conclusively establishes that Pedeco did not sustain an actual
loss from the blow-out of the H & O Well and therefore was not entitled to
recover under the indemnity policy.  We
agree.

.   .   .

            [The summary
judgment evidence conclusively shows that] although Pedeco may have paid
blowout costs, the funds were advanced to Pedeco by WRI; and WRI was not
reimbursed by Pedeco for any of the funds advanced.  Consequently, any loss that Pedeco suffered
as a result of the blowout was made good by WRI.

.   .   .

            We therefore
hold that, because Pedeco did not suffer a “legal loss,” it was not entitled to
benefits under the well control policy.

.   .   .

            Because
Pedeco was not entitled to policy benefits, Gotham argues it is entitled to
restitution of the policy benefits it paid under an erroneous belief or mistake
of fact.  We again agree.

.   .   .

            Because the
evidence conclusively establishes that Gotham paid Pedeco’s claims under the
mistaken belief that the claims were covered by the [well-control] indemnity policy,
and because there is no evidence tending to establish that restitution would be
inequitable, we hold Gotham is entitled to restitution of the benefits paid to
Pedeco.  Therefore, the trial court erred
in denying Gotham’s motion for summary judgment on its restitution claim
against Pedeco.

.   .   .

            Gotham also
argues the trial court erred in denying its motion for summary judgment on its
restitution claims against WRI and the Fund, because Gotham’s payments
extinguished the valid claims of vendors and thereby discharged WRI and the
Fund from debts [they] owed under the JOA; consequently, Gotham argues, WRI
[and the Fund were] unjustly enriched by Gotham’s payments.  We agree.

.   .   .

            We affirm the
trial court’s summary judgment against Pedeco and in favor of Gotham on Pedeco’s
counterclaims for bad faith and violations of the Texas Insurance Code.  In all other respects, the trial court’s
judgment is reversed.  We render judgment
in favor of Gotham that Pedeco take nothing on its breach of contract
counterclaims.  Gotham asks that we
render judgment in its favor on its restitution claims as well.  However, it gives no particulars; and the
judgment that should have been rendered is not at all obvious.  We therefore exercise our discretion to simply
remand Gotham’s restitution claims to the trial court for further proceedings
consistent with this opinion.

 

Gotham I, 2003 WL
21696625, at *3-*8.

            On remand,
Gotham filed a “motion to enter final judgment,” seeking $1,823,156.27 in
restitution plus interest, and a motion for attorney’s fees.  The trial court, without receiving additional
evidence, granted both of Gotham’s motions.  Warren E & P, Inc. (f/k/a Pedeco), WRI,
and the Fund appealed.  The Fourth Court
reversed the portion of the trial court’s judgment awarding restitution in the
amount of $1,823,156.27 plus interest, and remanded the case to the trial court
with instructions that it proceed with a new trial on the amount of restitution
to be awarded to Gotham.  Gotham II, 2006 WL 1080246, at *3.  In its opinion, the Fourth Court noted that
the parties were in dispute as to the amount that Gotham, as opposed to Gotham’s
underwriters, actually paid in policy benefits. 
Id. at *2.  The Fourth Court also reversed the portion of
the trial court’s judgment awarding attorney’s fees to Gotham and rendered
judgment that Gotham take nothing in that regard.  Id.
at *3.

            On the
second remand, Gotham filed a motion for summary judgment on the amount owed in
restitution, as did Warren E & P, Inc., WRI, and the Fund.  The trial court granted Gotham’s motion and
denied the motion filed by Warren E & P, Inc., WRI, and the Fund.  The trial court’s judgment stated in relevant
part:

            The court
hereby RENDERS judgment for Plaintiff Gotham Insurance Company, and ORDERS
that:

            1. Plaintiff,
Gotham Insurance Company, recover damages from Defendants Warren E & P,
Inc., f/k/a Petroleum Development Corporation d/b/a Pedeco, Inc., Warren
Resources, Inc., and Oil Technology Fund 1996 -- Series D, L. P., in the sum of
$1,823,156.27, prejudgment interest on the sum of $1,823,156.27 at the annual
rate of 5.00% running from the date Gotham filed suit on May 21, 1999 until the
day before judgment is rendered in the sum of $989,497.61, and taxable court
costs in the amount of $13,127.32.

 

THE ISSUES

            In their
first issue, Appellants Warren E & P, Inc., WRI, and the Fund argue that
the trial court erred in granting Gotham’s motion for summary judgment because,
contrary to the opinions in Gotham I
and Gotham II, “Texas law [does] not
recognize any equitable right to reimbursement for an insurer that fails to
obtain a contractual right to reimbursement.” 
Appellants cite Excess
Underwriters at Lloyd’s, London v. Frank’s Casing Crew & Rental Tools, Inc.,
246 S.W.3d 42 (Tex. 2008), in support of their argument.

            Under the
law-of-the-case doctrine, a court of appeals is ordinarily bound by its initial
decision if, as in this case, there is a subsequent appeal.  Briscoe
v. Goodmark Corp., 102 S.W.3d 714, 716 (Tex. 2003).  That doctrine is based on public policy and
is aimed at putting an end to litigation. 
Id.  However, a court of appeals is not bound by
its initial decision if there has been a change in the governing law.  City of
Dallas v. Jones, 331 S.W.3d 781, 785 (Tex. App.--Dallas 2010, pet. dism’d).

            As we noted
above, the Fourth Court, in Gotham I,
held that Gotham was entitled to equitable restitution from Pedeco, WRI, and
the Fund because those three entities were unjustly enriched at Gotham’s
expense.  The Fourth Court considered the
rule announced in TAC v. Matagorda County,
52 S.W.3d 128 (Tex. 2000), that abolished the equitable right of restitution of
insurance companies against their insureds but reasoned that Matagorda did not apply to the issues before
it.  However, in Gotham I, the Fourth Court did not have the benefit of the Texas
Supreme Court’s analysis in Frank’s Casing,
which clarified the holding in Matagorda
expressly rejecting the remedy of equitable reimbursement and refusing to
recognize any exceptions to the rule. 
The Supreme Court reasoned that distinctions in the facts raised did not
alleviate the contractual based concerns that drove the Court’s decision in Matagorda eliminating an insurer’s
equitable right to reimbursement.  The
Court expressly held that an insurer can seek reimbursement only when that
right is included in the policy or there is a clear and unequivocal contractual
agreement reached to that effect.  As a
matter of law, an insurer may not seek equitable restitution against an insured
for erroneous payment of a non-covered claim if the insurance policy does not
provide for such a remedy.  Frank’s Casing, 246 S.W.3d at 45-47.  The Court explained that the rights of the
parties to the insurance policy must be found in the policy itself, and if the
insurer wants the right to reimbursement for erroneous payment of non-covered
claims, the insurer must include such a right in the policy, which might yield
a lower premium than a policy that does not contain such a right.  Id.
at 46, 50.  To recognize an equitable
right to reimbursement, where the policy does not provide for that right, would
require us to rewrite the parties’ contract or add to its language.  Id.
at 50.

            In the
instant case, Pedeco’s policy with Gotham did not provide for a right to
reimbursement for payment of non-covered claims.  Therefore, Gotham has no right to reimbursement
from Warren E & P, Inc. (f/k/a Pedeco) for payment of the non-covered
claims in question.

            Gotham seeks
reimbursement from WRI and the Fund under the theory of unjust enrichment,
claiming that Gotham’s payments extinguished the valid claims of vendors and
thereby discharged WRI and the Fund from debts they owed.  Where, as here, the parties to an insurance
contract have spelled out their respective remedies and the policy addresses
reimbursement issues, equity cannot give Gotham rights of recovery that the
parties did not agree to in their contract. 
Frank’s Casing restated the
bright-line rule disallowing reimbursement on an equitable unjust enrichment
theory because insurers are in a superior position to evaluate the risks
stemming from a coverage dispute and can expressly allocate that risk by
delineating reimbursement rights in their policies.  Gotham could have included a clause in the
policy that would have provided for credit against loss payments to the insured
in any amounts due to Pedeco by third parties not responsible for the
loss.  Prevailing Texas Supreme Court
authority prohibits granting Gotham an equitable right of reimbursement that
does not exist in the insurance policy. 
The Supreme Court has recognized the “‘strong public policy in favor of
preserving the freedom of contract’” and has warned that courts “‘should not by
judicial fiat insert non-existent language . . . into parties’ agreed-to
contracts.’”  Id. at 51 (quoting Fortis
Benefits v. Cantu, 234 S.W.3d 642, 649 n.41 (Tex. 2007)).  Therefore, Gotham has no right to
reimbursement from WRI and the Fund for unjust enrichment.

            Given our
disposition of Appellants’ first issue, we need not reach their second and third
issues or Gotham’s cross-issue.

CONCLUSION

            We reverse
the judgment of the trial court and render judgment that Gotham take nothing in
its claims against Warren E & P, Inc., WRI, and the Fund.

 

                                                                        GUADALUPE
RIVERA, Justice

April 18, 2012

 

Before McClure, C.J., Rivera, J., and Antcliff, J.

Antcliff, J., dissenting

 

 

 

 

D I S S E N T I N G  O P I N I O N

In 2003, the San Antonio Court of Appeals
held, as a matter of law, that “Gotham is entitled to restitution of the
benefits paid to Pedeco.”  See Gotham Ins. Co. v. Petroleum Dev. Corp.,
No. 04-01-00375-CV, 2003 WL 21696625, at *7 (Tex.
App.--San Antonio July 23, 2003, pet. denied) (mem. op.) (hereafter “Gotham I”).  The court also held that Gotham is entitled
to restitution from WRI and the Fund.  Id. 
In 2006, the San Antonio Court re-affirmed these holdings to be
the law of the case.  Warren E & P, Inc. v. Gotham Ins. Co.,
No. 04-05-00186-CV, 2006 WL 1080246, at *2
(Tex. App.--San Antonio April 26, 2006, pet. denied) (mem. op.) (hereafter Gotham II) (“Gotham I
unequivocally held Gotham was entitled to restitution making it the law of the
case . . . .”).

“Under the law of the case doctrine, a
question of law previously decided on appeal governs a case throughout its
subsequent stages.”  Jones & Gonzalez, P.C. v. Trinh, 340 S.W.3d 830, 836 (Tex.
App.--San Antonio 2011, no pet.).  The
doctrine applies even when a case is transferred to us from another court of
appeals.  See, e.g., Caplinger v. Allstate Ins. Co., 140 S.W.3d 927, 929-30
(Tex. App.--Dallas 2004, pet. denied); see
also Thomas v. Collins, 860 S.W.2d 500, 502 (Tex. App.--Houston [1st Dist.]
1993, writ denied) (treating prior decision of this Court as law of the
case).  We are required to decide a
transferred case in accordance with the precedent of the transferor court,
regardless of whether we might have decided the case differently if it had
arisen in our own district.  See Tex.
R. App. P. 41.3.  We must follow
the transferor court’s precedent “unless it appears that the transferor court
itself would not be bound by that precedent.” 
Id. cmt.

Therefore, the issue before us is whether
there is any basis for departing from the San Antonio Court’s ruling.  My colleagues have concluded that we need not
follow Gotham I because an
intervening decision by the Texas Supreme Court changed the law.  Because I disagree with this conclusion, I
respectfully dissent.

            In Matagorda, Matagorda County demanded
that its insurer defend
and indemnify it against a third-party claim. 
Tex. Ass’n of Counties County
Gov’t Risk Mgmt. Pool v. Matagorda County, 52 S.W.3d 128, 129 (Tex.
2000).  Believing that the claim fell
within a policy exclusion, the insurer filed a declaratory judgment action to
determine whether the claim was covered. Id.  The plaintiffs in the underlying suit offered to
settle within policy limits, and the County’s lawyer determined that the
proposed settlement was reasonable and prudent. 
Id.  The County, however, refused to contribute
any money to the settlement, asserting that the claim was not excluded from
coverage and therefore the insurer should pay. 
Id. at 130.

            The policy allowed the insurer to
settle claims at its own discretion without the County’s consent.  Id.  Accordingly, the insurer went forward with
the settlement and paid the entire settlement amount.  Id.  But the insurer sent the County a letter in
which it reserved its rights to deny coverage and to seek reimbursement of the
settlement funds if it prevailed on the coverage issue in the declaratory
judgment action.  The County did not respond
to the letter.  Id.  The insurer then amended
its declaratory judgment petition to seek reimbursement of the settlement
funds.  Id.  The insurer prevailed on
the coverage issue and obtained a judgment for the full amount of the
settlement.  Id.

            The Texas Supreme Court concluded
that the County’s silence in response to the reservation-of-rights
letter, combined with its acknowledgement that the settlement was reasonable,
did not create an implied contractual reimbursement obligation.  Id.
at 131.  The court reached this
conclusion by applying ordinary, black-letter contract principles.  See id.
at 131-33.

            The court then
considered whether the insurer had an equitable right to reimbursement under
the quasi-contractual theories of quantum meruit and unjust enrichment.  The court held that these theories did not
apply “in the circumstances presented.”  Id. at 134.  In reaching this conclusion, the court
focused on the potential for unfairness to the insured.  If the insurer could seek reimbursement under
the circumstances presented in the case, the insured would be “forced to choose
between rejecting a settlement within policy limits or accepting a possible
financial obligation to pay an amount that may be beyond its means, at a time
when the insured is most vulnerable.”  Id. at 135.  Moreover, the insurer is in the best position
to determine whether coverage exists.  Id. 
The Supreme Court thus held “that, when coverage is disputed and the
insurer is presented with a reasonable settlement demand within policy limits,
the insurer may fund the settlement and seek reimbursement only if it obtains
the insured’s clear and unequivocal consent to the settlement and the insurer’s
right to seek reimbursement.”  Id.

            In Gotham I, Pedeco argued that Matagorda
abolished any extra-contractual right of 
restitution that an insurer might have had against its insured.  See
2003 WL 21696625, at *6.  The San Antonio Court of Appeals concluded
that Matagorda was distinguishable because it involved an
insurer’s suit against its insured for reimbursement of settlement funds paid
to a third-party claimant under a reservation of rights after the third party’s
claim was adjudicated to be excluded from coverage under a comprehensive
general liability policy.  Id.  By contrast, the issue presented
in this case is “whether an insurer is entitled to restitution from its insured
when, in reliance upon its insured’s
representations, it pays an alleged loss that was in fact ‘no loss’ because
it was ‘made good’ by a third party.”  Id. (emphasis added). We should follow the San Antonio Court’s ruling in Gotham I unless it was clearly erroneous
or a subsequent decision changed the law. 
Briscoe v. Goodmark Corp., 102
S.W.3d 714, 716 (Tex. 2003); City of
Dallas v. Jones, 331 S.W.3d 781, 785 (Tex. App.--Dallas 2010, pet. dism’d).

Although I have not found a
case defining “clearly erroneous” for law-of-the-case purposes, I believe that
it must refer to something more than a mere disagreement with the prior
decision.  We apply the law-of-the-case
doctrine to narrow the issues in successive stages of litigation, to achieve uniformity, and to promote
judicial economy and efficiency.  Briscoe, 102
S.W.3d at 716.  The doctrine is
based on public policy and is aimed at putting an end to litigation.  Id.  It discourages
parties from relitigating an issue in the hope of finding a more favorably
disposed tribunal.  See LeBlanc v. State, 826 S.W.2d 640, 644 (Tex. App.--Houston [14th
Dist.] 1992, pet. ref’d) (“Without application of this doctrine,
appellant would be able to gamble that between two court of appeals’ decisions
he would have a better chance of obtaining a favorable ruling by one of them.”).

In my view, Gotham
I drew a perfectly reasonable distinction between this case and Matagorda.  Whereas Matagorda
involved the settlement of a third-party claim, this case involves a
first-party claim.  The public policy
rationales undergirding Matagorda do
not apply outside the settlement context.

            Moreover, the Texas Supreme
Court denied review in both Gotham I
and Gotham II.  This demonstrates that, at least as of 2006,
the San Antonio Court’s interpretation of Matagorda
was not clearly erroneous.[1]  See
Caplinger, 140 S.W.3d at 930 (“Where the supreme court declines an
opportunity to review a court of appeals’s opinion, that opinion is not clearly
erroneous.”); see also Hurd Enters. v. Bruni, 828 S.W.2d 101,
106 (Tex. App.--San Antonio 1992, writ denied); Am. Trading & Prod. Corp. v. Phillips Petroleum Co., 449 S.W.2d
794, 801 (Tex. Civ. App.--El Paso 1969, writ ref’d n.r.e.).

In 2008, the Texas Supreme Court issued its final
decision in Frank’s Casing.  Like Matagorda,
Frank’s Casing again involved
settlement of a third-party claim.  See Excess Underwriters at Lloyd’s, London
v. Frank’s Casing Crew & Rental Tools, Inc., 246 S.W.3d 42, 43-45 (Tex.
2008).  The Supreme Court noted that, at
least in some respects, the two cases had “indistinguishable facts.”  Id.
at 51; see also id. at 45 (noting
that Matagorda involved “similar,
though not identical, circumstances”).  

The court reviewed its Matagorda holding and declined to overrule it.  See id.
at 45-48.  In addition to the public
policy rationales discussed in Matagorda,
the court found other reasons to deny an implied right to reimbursement.  As in Matagorda,
these reasons derive from the unique circumstances surrounding settlement of a
third-party claim.  If the insurer had a
right to reimbursement, defense counsel might face a conflict of interest during
settlement discussions.  Id. at 47.  A right to reimbursement would also weaken
the insurer’s incentive to negotiate a settlement most favorable to the
insured.  The insurer might seek to limit
its litigation expenses by negotiating a quick settlement, all the while
knowing that its insured would likely bear the ultimate burden of paying the
settlement.  Id.  These concerns “portend
significant distrust in the insurer/insured relationship during the settlement
process should an equitable reimbursement right be implied.”  Id.

The court next considered the insurers’ attempts to
distinguish Matagorda.  The insurers argued that Matagorda did not control because the insured sought a settlement
demand from the plaintiff and then insisted that the insurers pay it.  Id.
at 50.  The insurers further asserted
that Matagorda was distinguishable
because they were excess insurers with no duty to defend.  Id.  The Supreme Court held that these
distinctions were irrelevant.  Id. 
The court also stated:  “There is an additional reason that the excess
underwriters are not entitled to a reimbursement right.  That is, ‘[w]hen a valid agreement already
addresses the matter, recovery under an equitable theory is generally
inconsistent with the express agreement.’” 
Id. (quoting Fortune Prod. Co. v. Conoco, 52 S.W.3d
671, 684 (Tex. 2000)).

This review of the opinion demonstrates that Frank’s Casing did not change the
law.  Presented with virtually identical
facts as in Matagorda, the court
simply adhered to its prior decision. 
And, again as in Matagorda,
the court’s reasoning demonstrates that it was concerned with potential
unfairness to an insured who has an opportunity to settle a third-party
claim.   These concerns do not apply
here.  No conflict of interest has been
suggested.  Unlike the scenarios
envisioned in Matagorda and Frank’s Casing, here Gotham was not in a
position to take advantage of Pedeco or to settle a claim for an unreasonable
amount, knowing that Pedeco would bear the ultimate responsibility.  Instead, Pedeco was the party with superior
knowledge and Pedeco made representations to Gotham, which were relied upon by
Gotham, about its ownership interest and as to which entity was paying the
blow-out costs.  See Gotham I, No. 04-01-00375-CV, 2003 WL 21696625, at *2.

Although Frank’s
Casing indicates that equitable remedies generally cannot supplant or add
terms to a contract, it does not preclude all equitable remedies in every
situation.  The court cited Fortune Production, which held, “Generally speaking, when a valid,
express contract covers the subject matter of the parties’ dispute, there can
be no recovery under a quasi-contract theory, with certain exceptions not
relevant here . . . .”  52 S.W.3d at 684
(emphasis added & citations omitted). 
One well-recognized exception to this general rule is that a party may
recover under the equitable theory of restitution for payments made due to a
mistake of fact.  “It is [a] settled rule
of law that an insurance company which makes payment under a
policy because of an erroneous belief induced by a mistake of fact that the
terms of the insurance contract required such payment is entitled to
restitution from the person receiving such payment, unless it has agreed to
assume the risk of mistake, or unless there is some reason which makes it
inequitable or inexpedient for restitution to be granted.”  Int’l
Ins. Co. v. Jataine, 495 S.W.2d 309, 320-21 (Tex. Civ. App.--Corpus Christi
1973, writ ref’d n.r.e.); accord
Community Mut. Ins. Co. v. Owen, 804 S.W.2d 602, 605 (Tex. App.--Houston
[1st Dist.] 1991, writ denied); Singer v.
St. Paul Mercury Ins. Co., 478 S.W.2d 579, 583 (Tex. Civ. App.--San Antonio
1972, writ ref’d n.r.e.).  The San
Antonio Court of Appeals relied on this exception in Gotham I, and there is nothing in Frank’s Casing to suggest that the exception is no longer
valid.  See Gotham I, 2003 WL 21696625, at *6.

As a result of Pedeco’s representations, Gotham
erroneously believed that Pedeco’s claim was covered by the policy.  Thus, Gotham made payments under a mistake of
fact.  By contrast, the insurers in Frank’s Casing and Matagorda made payments under a mistake of law.  Unlike Gotham, they did not believe that the
claims were covered, but they paid the claims under the assumption that they
could obtain reimbursement if they ultimately prevailed on the coverage issues.  See
Owen, 804 S.W.2d at 605 (“A mistake of law means a mistake as to the legal
consequences of an assumed state of facts.”); see also Pennell v. United Ins. Co., 243 S.W.2d 572, 576 (Tex.
1951) (“There is no suggestion in the record that there was a mistake of fact
as to the kind of automobile in which petitioner was riding when injured or any
other mistake of fact. The question whether the double indemnity provision of
the policy applied to the jeep, the answer to which determined respondent’s
liability or nonliability for double indemnity, was one of law.”).

Finally, even if Frank’s
Casing changed the law as to Gotham’s claim against Pedeco, it certainly
does not foreclose Gotham’s claim for restitution from WRI and the Fund.  Neither WRI nor the Fund were parties to the
insurance policy.  As discussed above, Frank’s Casing and Matagorda were based on the existence of an insurer/insured
relationship and on the existence of a contract.  Neither of these facts apply to WRI and the
Fund.

            Because Frank’s Casing did not change the law as
announced in Matagorda, I would
affirm the judgment of the trial court, and I respectfully dissent.

 

 

April
18, 2012                                     CHRISTOPHER
ANTCLIFF, Justice

 











 

[1]
The record reflects that the Texas Supreme Court transferred this case from the
Fourth Court of Appeals to this Court.  See Tex.
Gov’t Code Ann. § 73.001 (West 2005).

 





[1]
Indeed, the San Antonio Court in Gotham I
and Gotham II issued memorandum
opinions pursuant to Rule 47.4 of the Texas Rules of Appellate Procedure, a
clear indication that the Court considered the issues raised “settled” even in
light of the Supreme Court’s holding in Matagorda.